John T. DEMARS, Plaintiff, Appellant,

v.

GENERAL DYNAMICS CORPORA-
TION, Defendant, Appellee.

No. 85–1276.

United States Court of Appeals,
First Circuit.

Dec. 11, 1985.

Douglas M. Brooks with whom Francis C. Newton, Jr., Boston, Mass., was on brief for plaintiff, appellant.

Richard W. Benka with whom Foley, Hoag & Eliot, Boston, Mass., was on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and CEREZO,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellant John T. Demars ("Demars") appeals from a decision of the United States District Court for the District of Massachusetts granting summary judgment to defendant-appellee General Dynamics Corporation ("GDC") in an action for wrongful termination of employment, and denying appellant's motion to amend his complaint to add, *inter alia,* a negligence claim. Because we find no merit in any of appellant's contentions, we affirm.

### I.

The basic facts of this case are simple and uncontroverted. Demars resigned from employment as a pipefitter for GDC in November 1980. In December 1981 and January 1982, GDC sent recall notices to employees who had been laid off by the company. Demars was erroneously includ-

---

* Of the District of Puerto Rico, sitting by designa-
tion.

ed among those recalled even though, having resigned, he was not on "layoff" status and eligible for recall. He worked for one shift on January 11, 1982, before GDC, recognizing the error, terminated his employment the following day.

On January 20, 1982, Local 5 of the Industrial Union of Marine and Shipbuilders Workers of America ("Union"), to which Demars belongs, filed a grievance contesting the termination on behalf of plaintiff. The Union decided not to pursue the grievance to arbitration and withdrew its complaint on July 23, 1982, apparently without formally notifying Demars of this fact. Such a withdrawal represented, under the contract, a final and binding disposition of Demars' grievance.

On December 27, 1984,[1] plaintiff filed this action in the Massachusetts superior court, challenging his termination as unlawful under the state law doctrine of wrongful termination. Specifically, Demars alleged that he resigned from his former employment in the belief that he had been recalled, that he entered into an employment contract with GDC between December 23, 1981, and January 11, 1982, and that GDC broke its agreement by terminating him without good cause. Plaintiff asked for $100,000 in damages for "lost wages and benefits, severe emotional distress and other injuries."

GDC removed the case to the district court under 28 U.S.C. § 1332(a)(1) and moved for summary judgment on the grounds that Demars' claim of wrongful termination was governed by section 301 of the Labor Management Relations Act, 28 U.S.C. § 185(a) ("LMRA"), not state law, and was thus time-barred by the applicable six-month statute of limitations. Conceding that the action as filed was governed by section 301, plaintiff asked for leave of the court to amend his complaint to add the Union as a defendant, to add a "hybrid" section 301/fair representation

claim against GDC and the Union, and to add a state law claim against GDC for negligently recalling him.

On March 11, 1985, the court granted GDC's motion for summary judgment. First, it held that allegations of unfair termination are governed by the LMRA, not state law. Second, plaintiff's rights under the LMRA would be governed by the six-month statute of limitations under section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), and thus time-barred. The court also denied leave to amend the complaint because "even as amended," the complaint "would not survive as against GDC and any action against the Union is based on an independent set of facts unconnected with GDC."

On appeal, Demars contends that the district court abused its discretion in granting summary judgment to GDC. He argues that his claim against his former employer is timely because the applicable six-month statute of limitations was tolled by the Union's fraudulent concealment. Demars further contends that he has a valid state law claim against GDC for negligent recall, and that the court erred in denying him leave to amend his complaint so as to insert that claim.

## II.

### A. *Statute of Limitations*

The standard of review on a motion for summary judgment under Fed.R.Civ.P. 56 is essentially the same inquiry undertaken by the district court—whether viewing the record in the light most favorable to the opposing party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See, e.g., Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Santoni v. Federal Deposit Insurance Corp.*, 677 F.2d 174, 177 (1st Cir.1982). Because we find no

---

1. While the district court referred to January 3, 1985, the date that plaintiff's summons and complaint was served upon GDC, as the filing date, the actual filing date was December 27, 1984. However, this seven-day discrepancy between the two dates is immaterial to our disposition.

disputed issues of fact with respect to whether Demars' section 301 is time-barred or any other matter, we hold that the granting of summary judgment to GDC was not an abuse of discretion.

An employee is ordinarily expected to settle disputes arising out of a collective bargaining contract with his employer through established grievance procedures. The employee may, however, bring an action against his employer for violating a collective bargaining agreement if the union violated its duty of fair representation by, for example, failing to properly prosecute the employee's grievance. In a "hybrid" case, an employee must typically prove both that the employer violated its contract and that the union breached its duty, since the two claims are inextricably linked. *See, e.g., Bowen v. United States Postal Service,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983); *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967).

The district court properly found, and plaintiff concedes, that the limitations rule announced in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), governs both Demars' section 301 claim against GDC and any fair representation claim he may have against the Union. In *DelCostello* the court held that the applicable statute of limitations as to both the employer and the union in a hybrid section 301/fair representation case is section 10(b) of the NLRA, which provides that claims for unfair labor practices must be brought within six months from the accrual of the cause of action.

Such a cause of action normally accrues when a plaintiff "could first have successfully maintained a suit based on that cause of action." *Bell v. Aerodex, Inc.,* 473 F.2d 869, 873 (5th Cir.1973). As demonstrating the Union's breach of duty is an "indispensable predicate" to suit, *Mitchell,* 451 U.S. at 62, 101 S.Ct. at 1564, Demars' cause of action accrued when he received "notice of

the alleged union wrongdoing," *McNutt v. Airco Industrial Gases Division,* 687 F.2d 539, 543 (1st Cir.1982). *See Santos v. District Council of New York,* 619 F.2d 963, 969 (2d Cir.1980); *Bradford v. General Telephone Co.,* 618 F.Supp. 390, 394 (W.D. Mich.1985); *Scaglione v. Communications Workers of America, Local 1395,* 586 F.Supp. 1018, 1021 (D.Mass.1983), *aff'd,* 759 F.2d 201 (1st Cir.1985) (per curiam). Here, the earliest Demars knew or should have known about the Union's purported breach of duty to him was July 23, 1982, when the Union withdrew the grievance it had filed on his behalf.

Demars contends that he did not discover that the Union had withdrawn his grievance until February 22, 1985, when GDC moved for summary judgment. Demars says that he could not earlier have discovered the facts necessary to his cause of action because the Union had misled him into thinking it was actively pursuing the grievance when it was not, especially by failing to notify him of the withdrawal of the grievance. Therefore, Demars asserts, the statute is tolled as to both the Union and GDC because of the Union's fraudulent concealment. Since we find that the statute of limitations was not tolled even as to the Union, we need not reach the issue of whether fraudulent acts of the Union could toll the statute as to GDC.

Under federal law, a defendant's "fraudulent concealment" may toll the statute of limitations until plaintiff discovers the facts that form the basis of his cause of action, so long as two conditions are met: first, "defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing," and second, "plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence." *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 101 (1st Cir.1979); *see also Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1521 (9th Cir.1983), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446,

79 L.Ed.2d 765 (1984); *Richards v. Mileski,* 662 F.2d 65, 69 (D.C.Cir.1981). Here, however, Demars has not set out facts showing a genuine issue of either deliberate concealment by the Union or due diligence on his part.

Demars attested that an unidentified Union representative, at some unspecified date after his grievance was filed, assured him that the Union would "keep trying" in some unspecified manner, and that "if anything changed [the representative] would let him know immediately." The force of this statement is weakened by Demars' concession that during this same conversation the representative also informed him that the Union "had pursued his grievance through 'all three levels' of appeal," and that the Union "had done all [it] could do at this time." Considering also that Demars failed to give the date when these remarks were made,[2] it might seem unlikely that a reasonable trier would conclude that the Union was deliberately concealing its intentions or that it was attempting to "throw appellant off the track of any inquiry."[3] *Hernandez Jimenez,* 604 F.2d at 102. Certainly the statement that the Union, after pursuing multiple levels of appeal, "had done all [it] could do at this time," held out scant hope for future success.

Demars makes a further argument, however. He insists that the Union's failure to inform him when it withdrew his grievance amounted to fraudulent concealment, since the Union had a fiduciary duty to apprise him of the withdrawal. Silence "can be fraudulent concealment by a person, such as a fiduciary, who has a duty to disclose." *Jamesbury Corporation v. Worcester Valve Co.,* 443 F.2d 205, 209 (1st Cir.1971); *see also Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir. 1978).

It is unclear to what extent a union has a duty to notify a member when it withdraws a grievance pertaining to him. Courts have ordinarily held that, while a union's failure to notify a grievant may be negligent and in poor judgment, such an omission, without anything more, does not violate a union's duty of fair representation. *See Eichelberger v. NLRB,* 765 F.2d 851, 854–58 (9th Cir.1985); *Smith v. Hussmann Refrigerator Co.,* 619 F.2d 1229, 1241 (8th Cir.), *cert. denied,* 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied,* 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976); *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir.1970); *Font Llacer v. Pan American World Airways, Inc.,* 582 F.Supp. 188, 192 (D.P.R.1984). A union has "a wide range of reasonableness" in how it chooses to carry out its duty to represent fairly its members. *Ford Motor Company v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). So long as it avoids conduct that is "arbitrary, discriminatory, or in bad faith," *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916, its merely negligent handling of an employee complaint will not usually rise to the level of a breach of its duty of fair representation. *See, e.g., Dober v. Roadway Express, Inc.,* 707 F.2d 292 (7th Cir.1983); *Higdon v. United Steelworkers,* 706 F.2d 1561, 1562 (11th Cir.1983); *Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir.1981); *Buchanan v. NLRB,* 597 F.2d 388, 394 (4th Cir.1979).

█ The question remains, nonetheless, whether a union's failure to inform an employee about its disposition of his grievance might constitute a fraudulent concealment for tolling purposes even if not actionable as a breach of the duty of fair representa-

---

**2.** The alleged misleading statements by the Union could well have been made after the six-month limitations period had already expired, in which case subsequent events could not toll it.

**3.** The Union's remarks are in sharp contrast to the actively misleading comments in *Curry v.*

*Chrysler Corp.,* 95 L.R.R.M. 2356 (E.D.Mich. 1977), where, after the grievance had been withdrawn, the union responded to plaintiff's inquiries with assurances that it was being processed, that such matters took time and that he should be patient.

tion. We need not decide this question. Even assuming, *arguendo*, that a triable issue of fraudulent concealment were raised, there remains the question of Demars' own diligence. We think it plain that he was inexcusably dilatory, and therefore lacked due diligence, in discovering the facts underlying his claim against the Union.

Demars knew from January 20, 1982 that a grievance had been filed. He says he was told at some unspecified later date that it had gone through " 'all three levels' of appeal," and that the Union felt it had done "all [it] could do" but would "keep trying." Still, for all of the nearly three years after his grievance was filed, he made no meaningful inquiry. We are not talking about anything particularly difficult, costly, or time-consuming. A simple phone call could have produced the relevant information. Yet, it was not until October 25, 1984, that Demars allegedly sent a letter to the Union through his attorney asking for information on actions the Union had taken, "in order to make sure that [plaintiff] has exhausted all possible remedies short of litigation." This action was too little and too late.

In sum, plaintiff failed to present facts which, if proven, would show that events operated to toll the statute, and thereby failed to meet his burden of establishing that he was suing within the statutory period. *See Cook v. Avien,* 573 F.2d 685, 695 (1st Cir.1978). His hybrid suit is time-barred as against both GDC and the Union.

### B. *Claim of Negligent Recall*

In response to GDC's March 4, 1985 motion for summary judgment, Demars filed a motion for leave to amend his complaint, to add a count against his former employer for negligently recalling him, and to add the Union as defendant for violating its duty of fair representation. The district court denied Demars' motion, noting that the complaint, even as amended, would not survive as against GDC and that any action against the Union was "based on a set of facts unconnected with GDC." Demars now appeals from the court's denial of his motion as arbitrary, capricious, and an abuse of discretion.

While motions to amend are liberally granted, *see Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 896 (1st Cir.1979), a court has the discretion to deny them if it believes that, as a matter of law, amendment would be futile. *See Jackson v. Salon,* 614 F.2d 15, 17 (1st Cir.1980); *Crews v. Memorex Corp.,* 588 F.Supp. 27, 28 (D.Mass.1984); 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1487 at 432–33 (1971) (citing cases). We will generally defer to a district court's decision to deny leave to amend where the reason is "apparent or declared." *Tiernan v. Blyth, Eastman, Dillon & Co.,* 719 F.2d 1, 4 (1st Cir.1983).

We hold that the district court properly denied leave to amend.[4] First, adding a fair representation claim against the Union would have been futile since, as we have held above, such a claim would have been time-barred along with Demars' section 301 claim against GDC. Moreover, an action against GDC for "negligently and wrongfully" recalling plaintiff would not have survived because Demars failed to state a claim upon which relief could be granted. Since "negligent recall" is not actionable under controlling Massachusetts case law,

**4.** We disagree with one of the court's stated reasons. While the facts underlying Demars' fair representation claim were different from those upon which his section 301 claim was based, the difference was not a reason for refusing permission to amend. The Supreme Court cases dealing with such suits make clear that the two claims are "inextricably interdependent," *Mitchell,* 451 U.S. at 66–67, 101 S.Ct. at 1566 (Stewart, J., concurring in the judgment), *quoted in DelCostello,* 462 U.S. at 164, 103 S.Ct. at 2290, and that to prevail against either the employer or the union, plaintiff must prevail against both. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). The fact that an employer did not participate in any way in the union's breach of its duty of fair representation does not shield it from being held culpable under section 301 when a union mishandles a grievance that arises from the employer's own breach of contract. *See Vaca,* 386 U.S. at 183–86, 87 S.Ct. at 913–15.

we do not address the issue of whether Demars' claim of negligent recall arises under the collective bargaining agreement and is therefore preempted by section 301.

Demars asserts that GDC negligently sent notices recalling him "when it knew or should have known that the plaintiff was not entitled to be recalled and when it knew or should have known that the plaintiff would act in reliance on the notices." He also alleges that he "gave up his other employment in response to defendant GDC's notices," and that he suffered damages in "lost wages and benefits, severe emotional distress, with resulting physical injuries, and other injuries" as a "direct and proximate result" of GDC's negligence. Finally, Demars contends that it was "reasonably foreseeable" that plaintiff or a person in plaintiff's position would rely on such recall notices and suffer the kind of harm that he suffered.

█ Reading the novel claim in the light most favorable to plaintiff, see *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976), we do not believe that it is actionable under Massachusetts law. For a court to find GDC negligent, defendant must have violated a legally cognizable duty of care of the kind Demars proposes. *See, e.g., Woolridge Manufacturing Co. v. United States*, 235 F.2d 513, 514 (D.C.Cir.1956) (per curiam); W. Prosser & W.P. Keeton, *The Law of Torts* § 30 (5th ed. 1984). Yet, to support his claim that an employer owes a special duty of care to a former employee, Demars has shown little that might imply such a duty. His best authority consists of two cases, neither in an employment context, which he cites for the general proposition that a defendant's duty of care is "measured by what is reasonably foreseeable under the circumstances." *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 973 (1st Cir.1969); *see also*

*Carrier v. Riddell, Inc.*, 721 F.2d 867, 868 (1st Cir.1983).

We said on a different occasion that plaintiff

attempts to expand the scope of the [negligence] concept by resort to the familiar, and sometimes misleading, rubric of "foreseeability." But reliance on such generality is of limited assistance, for "In a sense, in retrospect almost nothing is unforeseeable."

*Venezia v. Miller Brewing Co.*, 626 F.2d 188, 191 (1st Cir.1980) (quoting *Green v. Volkswagen of America, Inc.*, 485 F.2d 430, 438 (6th Cir.1973) ). Neither *Miranda* nor *Carrier*, moreover, concerned the standard of negligence in an employer-employee relationship. In sharp contrast to the facts here,[5] the main complaint in both cases involved serious physical injuries to plaintiffs as a result of defendants' alleged negligence.[6]

Plaintiff was unable to cite, and our research has failed to find, any case under Massachusetts law that recognizes a duty of care by an employer, never mind a former employer, that is even remotely similar to the one asserted here. The closest analogy we could find were cases imposing a duty on employer to deal in good faith when terminating employees-at-will. *See, e.g., McKinney v. National Dairy Council*, 491 F.Supp. 1108, 1121 (D.Mass.1980); *Gram v. Liberty Mutual Insurance Co.*, 384 Mass. 659, 429 N.E.2d 21 (1981); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977). But this duty has so far been limited to cases in which an employee was discharged in order to deprive her of compensation already due for past services, or was discharged for a reason that violated public policy.

Apart from the circumstances described above, an employer has no state law duty

---

**5.** While plaintiff alleged in his amended complaint that he suffered "physical injuries," he did not allege this in his original complaint and he offered no facts or evidence to support this bare contention.

**6.** *Cf.* Massachusetts courts have recognized that employers owe a duty of care to their employees to maintain a reasonably safe workplace, and

that they can be held liable if their negligence results in physical injury to employees. *See, e.g., Johnson v. A/S Ivarans Rederi*, 613 F.2d 334 (1st Cir.1980), *cert. dismissed*, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981); *Kukuruza v. General Electric Co.*, 510 F.2d 1208 (1st Cir. 1975); *Burr v. Massachusetts Electric Co.*, 356 Mass. 144, 248 N.E.2d 492 (1969).

to give any reason when discharging an employee-at-will, *see Cort v. Bristol-Myers Co.*, 385 Mass. 300, 431 N.E.2d 908 (1982), and it can even discharge an employee negligently and in bad faith, *see Tenedios v. Wm. Filene's Sons Co.*, 20 Mass.App. 252, 479 N.E.2d 723 (1985). We cannot find that a former employee would enjoy greater rights than current employees; nor can we say that protection from erroneous recall is more important than protection from negligent discharge. To conclude that employers owe a duty of care of the kind advocated by Demars would require radically changing the contours of existing employment law in Massachusetts—something which a federal court cannot do. We are in the business of applying state law, not changing it. *See Tarr v. Manchester Insurance Corp.*, 544 F.2d 14, 14–15 (1st Cir.1976) (per curiam). After reviewing the relevant case law,[7] we hold that the district court properly denied Demars' leave to amend the complaint.

*Affirmed.*

---

**7.** *Cf. Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 51 (1st Cir.1985) (in admiralty case, no tort action for financial harm negligently caused when foreseeable, except in special circumstances); *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982) (recovery for negligently inflicted emotional distress requires proof that plaintiff suffered physical harm as well).