**Henry DEMPSEY, Plaintiff,**

v.

**The NATIONAL ENQUIRER, et al., Defendants.**

**Civ. No. 88–0106–P.**

United States District Court,
D. Maine.

Dec. 20, 1988.

nevertheless it is clear that the harm to plaintiffs has been reduced as a result.

William Robitzek, Lewiston, Me., for plaintiff.

Ralph I. Lancaster, Pierce, Atwood, Portland, Me., and Gerson A. Zweifach, Williams & Connolly, Washington, D.C., for defendant National Enquirer.

John Bernotavicz, John Gleason, Portland, Me., and Neal M. Goldman, Squadron, Ellenoff, New York City, for defendant News America.

## MEMORANDUM DECISION AND ORDER

GENE CARTER, District Judge.

Before the court are the plaintiff's motion to amend his June 10, 1988 Amended Complaint against *The National Enquirer* (*NE*) and News America Publishing (NA) and the plaintiff's motion to reconsider this court's June 28, 1988 Order dismissing the Amended Complaint against *NE*.[1] 687 F.Supp. 692. For the reasons set forth below, the court denies both motions.[2]

### *Motion to Amend*

Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely granted when justice so requires." The court may deny such a motion if the record evidences "undue delay, bad faith or dilatory motive ..., repeated failure to cure ..., undue prejudice ..., or futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The Proposed Second Amended Complaint sets forth three new claims in addition to those set forth in the First Amended Complaint on which the Order of Dismissal was based. The first 11 paragraphs of both are identical and support the same

---

1. *NE* had published an article in September, 1987 reporting the plaintiff's harrowing escape from injury or death when he fell out of a small airplane while in flight but clung to the open boarding ladder of the plane, surviving his co-pilot's emergency landing with only a few scratches.

2. Also before the court is the defendant NA's motion to dismiss the amended complaint, which will be treated in a separate order.

claim for invasion of privacy based on false light publicity and commercial appropriation. Proposed Counts II and III for the intentional and negligent infliction of emotional distress are based on the original allegations and on additional allegations that "the actions of the defendant ... constitute conduct so extreme and outrageous as to exceed all possible bounds of decency," ¶ 13, and that "the defendants acted intentionally, recklessly or with substantial certainty that the plaintiff's distress would result." ¶ 14. Proposed Count IV for invasion of privacy based on intrusion on the plaintiff's solitude and seclusion rests on additional allegations regarding the attempts of a *NE* reporter to interview and photograph the plaintiff at his house and at a nearby restaurant. ¶¶ 18–34.[3]

Despite the court's grant of dismissal in favor of *NE*, amendment of the amended complaint would not prejudice either defendant since neither has yet conducted any significant discovery. Nor is the motion untimely, for it was made within this court's scheduling order deadline. The provisions of Fed.R.Civ.P. 15 permit amendment at any time before final judgment, and there is no final judgment under Fed. R.Civ.P. 54(b).[4] *See* 6 Wright & Miller, *Federal Practice and Procedure* § 1487 (1971). Neither defendant has alleged bad faith or dilatory motive or repeated failure to cure. *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230. *NE* does argue, however, that the plaintiff's proposed amendment

would be futile and that the court may deny the motion on that basis. *Id.; Demars v. General Dynamics Corp.,* 779 F.2d 95, 99 (1st Cir.1985) (denial of leave to amend upheld because the additional claim was both time-barred and failed to state a claim); *Vargas v. McNamara,* 608 F.2d 15, 18–19 (1st Cir.1979) (court recognized futility as a valid basis for denial). In determining whether to grant or deny the plaintiff's motion to amend, therefore, the issue is whether, in light of the prior dismissal of the invasion of privacy claim, the additional counts state a claim upon which relief can be granted.

■ The court first dispels any doubt regarding the operation of *res judicata* at this stage of the proceedings. Since the Order of Dismissal was interlocutory in nature, and since it was not certified for appeal under Fed.R.Civ.P. 54(b), it lacks finality and is subject to reconsideration. The Order thus operates as "law of the case," although it is not preclusive under the *res judicata* doctrine; this means that it is controlling in subsequent proceedings in the same case, but has no preclusive effect on collateral claims. *Lacy v. Gardino,* 791 F.2d 980, 984 (1st Cir.1986); 61A Am.Jur.2d *Pleadings* § 288 (1981).[5] The law of this case is that the publication (without the plaintiff's consent) of the *NE* article containing quotations allegedly falsely ascribed to the plaintiff was not so

---

**3.** This count is labeled "Count III" in the Proposed Amended Complaint but clearly should have been labeled "Count IV," and relates only to the claim against *NE*. *See* Plaintiff's Reply Memorandum in Support of Motion to Amend, page 6, n. 3.

**4.** The Order lacks finality because it dismissed the complaint only as to one defendant. The court did not certify the Order as final for purposes of appeal under Fed.R.Civ.P. 54(b). Thus, the time requirements under Fed.R.Civ.P. 60(b) are inapplicable.

**5.** *NE* argues that although the Order of Dismissal is not final for purposes of appeal, it is final for purposes of *res judicata,* relying on *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir.1988); *O'Reilly v. Malon,* 747 F.2d 820, 823 (1st Cir.1984); *Alexander v. Chicago Park District,* 773 F.2d 850, 855 (7th Cir.1985), *cert. de-*

*nied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The two First Circuit opinions do not support *NE*'s argument; in *Spiegel* the issue was whether an order possessed the requisite aspects of finality so as to justify the entry of a final judgment under Fed.R.Civ.P. 54(b), and in *O'Reilly* the issue was whether an *appellate* court decision was final for purposes of collateral estoppel even though the lower court had failed to explicitly certify the appeal under Fed. R.Civ.P. 54(b).

In *Alexander,* the Seventh Circuit held that less than technical compliance with Fed.R.Civ.P. 54(b) was sufficient to establish appealability so long as neither party is prejudiced but also held that the judgment in that case was sufficiently final for *res judicata* purposes because there had been an adequate hearing (a jury trial) and an opportunity for review. Here, there has been no Rule 54(b) certification, nor has there been any trial on the merits.

offensive as to be highly objectionable to a reasonable person and did not constitute commercial appropriation of the plaintiff's image or words.

■ Under Maine law, recovery for intentional infliction of emotional distress (Proposed Count II), requires, *inter alia*, a showing that the defendant's conduct was "so extreme and outrageous as to exceed all possible bounds of decency." *Gurski v. Culpovich*, 540 A.2d 764, 766–67 (Me.1988), citing *Restatement (Second) of Torts* § 46 (1965). In evaluating outrageousness, "[i]t is for the Court to determine, in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery, or whether it is necessarily so." Only "where reasonable men may differ" must the court turn the question over to a jury. *Rubin v. Matthews International Corp.*, 503 A.2d 694, 699 (Me.1986), citing *Restatement* § 46, comment h. *See also Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012, 1018–19, *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). Relying in part on *Fudge*, this court has made a threshold determination in its Order of Dismissal that the alleged misrepresentations in the *NE* article would not be highly objectionable to a reasonable person. It follows that the same conduct could not be found to be "so extreme and outrageous as to exceed all possible bounds of decency." *Gurski v. Culpovich*, 540 A.2d at 766–67. The court finds, therefore, that proposed Count II for the intentional infliction of emotional distress fails to state a claim upon which relief can be granted.

■ Proposed Count III is for the negligent infliction of emotional distress. Maine law is currently in transition regarding the elements of this action. In *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282 (Me.1987), the Law Court reviewed prior Maine law which had required "a showing of physical impact, objective manifestation, underlying or accompanying tort, or special circumstances," *Gammon* at 1283.[6] The *Gammon* court then proceeded to abandon these "artificial devices" in preference for the traditional emphasis on foreseeability, and found on that basis that a hospital's conduct in mishandling a corpse could support a jury finding of negligent infliction of emotional distress.[7]

Applying the *Gammon* principle to this case, the court makes the initial determination that *NE* could not reasonably have foreseen that the publication of the article in question would cause severe emotional distress to the plaintiff. This conclusion follows naturally from this court's finding in the prior Order of Dismissal that the publication of the article could not reasonably be found to be highly objectionable to the ordinary person. Proposed Count III, therefore, fails to state a claim upon which relief can be granted.

■ The third additional proposed count is for invasion of privacy based on an unreasonable intrusion upon another's seclusion. Maine has adopted the *Restatement* definition of this action, which is that "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me.1977) citing *Restatement (Second) of Torts* § 652 B (1965). In *Nelson*, the Law Court specifically required that a plaintiff "minimally allege a physical intrusion upon premises occupied privately ... for purposes of seclusion." *Nelson* at 1223. Relying on *Nelson*, this court has declined to find liability for invasion of privacy based on unreasonable intrusion upon another's seclusion based on failure to allege a physical intrusion upon private

---

6. *See Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me.1982); *Packard v. CMP Co.*, 477 A.2d 264 (Me.1984); *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694 (Me.1986); *Rowe v. Bennett*, 514 A.2d 802, 804 (Me.1986).

7. *NE* requested the court's permission to file a two-page surreply to the plaintiff's motion to amend the complaint in order to discuss the *Gammon* case. Without objection, the motion is GRANTED.

premises. *Muratore v. M/S Scotia Prince*, 656 F.Supp. 471, 482–83 (D.Me. 1987), *modified on other grounds*, 845 F.2d 347 (1st Cir.1988) (a cruise ship passenger was photographed by ship photographers in spite of her express objection but the offensive conduct occurred in the common public areas of the cruise ship). Moreover, the *Restatement* provides in comment d to § 652B that

> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

The allegations supporting Proposed Count IV describe a *NE* reporter's persistent attempts to photograph and interview the plaintiff. She allegedly came to his house and continued to press for an interview even after the plaintiff refused, repeatedly drove past his house for more than three-quarters of an hour after the refusal, returned to the plaintiff's house two days later and was again rebuffed, followed the plaintiff to a restaurant and again requested an interview, attempted to photograph the plaintiff at the restaurant, and then left after the plaintiff threatened to call the management. ¶¶ 19–31.

■ These allegations do not support a cause of action for invasion of privacy based on an unreasonable intrusion upon the seclusion of another under either *Nelson* or the *Restatement*. There is no assertion that the *NE* reporter went beyond the front door of the plaintiff's house. The reporter's presence on a public thoroughfare and in a restaurant open to the public cannot constitute an intrusion upon the seclusion of another. Since taking a photograph of the plaintiff in a public place cannot constitute an invasion of privacy based on intrusion upon the seclusion of another, *Restatement* § 652 B, comment c, it is obvious that an *attempt* to take a photograph cannot create liability. Although these contacts may well have been annoying, they cannot reasonably be seen as highly offensive. The court finds, therefore that Proposed Count IV fails to state a claim upon which relief can be granted.

Since all three of the plaintiff's additional claims as set forth in the Proposed Second Amended Complaint fail to state a claim upon which relief can be granted, the court concludes that the proposed amendment would be futile and accordingly DENIES the motion to amend. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Demars v. General Dynamics Corp.*, 779 F.2d 95, 99 (1st Cir. 1985); 6 Wright & Miller, *Federal Practice and Procedure* § 1487 (1971).

### Motion for Reconsideration

The plaintiff has requested the court to reconsider its June 28, 1988 Order of Dismissal, in which the court determined that the plaintiff failed to state a claim for invasion of privacy based on either a "false light" theory or on a "commercial appropriation" theory. Relying primarily on *Fudge v. Penthouse International, Ltd.*, 840 F.2d 1012 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988), the court specifically found (1) that *NE's* publication of the article about the plaintiff's unusual escapade, even if replete with quotations falsely ascribed to the plaintiff, was not so offensive as to be "highly objectionable to a reasonable person" under *Restatement (Second) of Torts* § 652 E, comment c; and (2) that *NE's* publication of the article and a photograph of the plaintiff, even if intended to boost sales of the newspaper, did not amount to appropriation of another's words or likeness for commercial profit under *Restatement (Second) of Torts* § 652 C. *See* Order, June 28, 1988.

Since the Order of Dismissal was inter-

locutory in nature,[8] the motion for reconsideration must be tested under the "interests of justice" standard which affords the court wide discretion. *See Greene v. Union Mutual Life Insurance Co.,* 764 F.2d 19, 23 (1st Cir.1985); 11 Wright & Miller, *Federal Practice and Procedure* § 2852 p. 145, n. 28 (1973).

In support of his motion, the plaintiff makes three arguments: (1) under Fed.R. Civ.P. 12(c), the court should have treated the motion to dismiss as a motion for summary judgment because the plaintiff had filed an affidavit; (2) the court erred in dismissing the false light invasion of privacy claim against the plaintiff *NE* because it focussed on the fact that the quoted material was attributed to sources other than the plaintiff, and failed to determine whether, without more, identification and association with *NE* resulting from the publication of the story and photograph could be perceived as highly objectionable to a reasonable person within the meaning of *Restatement (Second) of Torts* § 652 E; and (3) the court erred in dismissing the claim based on appropriation of the plaintiff's words and likeness for commercial profit because it too narrowly interpreted comment d to *Restatement (Second) of Torts* § 652 C to mean that a publication's profit motive will insulate it from liability, no matter how exploitive the story.

■ The procedural issue is easily resolved. Accompanying the plaintiff's objection to *NE*'s motion to dismiss was an affidavit. The court did not consider this affidavit, but reached its decision solely on the basis of the allegations in the Amended Complaint. Under the provisions of Fed.R. Civ.P. 12(b)(6), the court must treat a motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56 when a party presents and the court does not exclude matters outside the pleadings. Although the court did not specifically exclude the plaintiff's affidavit, such exclusion was implicit. Moreover, even if the court had considered the affidavit, any error in failing to treat the motion to dismiss as a motion for summary judgment would be harmless since the dismissal is valid without reference to the affidavit.[9] *Medina v. Rudman,* 545 F.2d 244, 247 (1st Cir.1976), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977).

■ The first substantive argument is that the court ignored an important aspect of the plaintiff's false light claim in failing to determine whether, aside from the content of the article, its mere publication resulted in the public's identification or association of the plaintiff with *NE,* which association would be highly objectionable to a reasonable person. Thus the precise issue on reconsideration is whether the Amended Complaint stated a claim that mere association with *NE* reasonably placed the plaintiff in a highly objectionable false light[10] when the court has already determined that the complaint failed to state such a claim as to the article itself.

In *Fudge v. Penthouse International, Ltd.,* 840 F.2d at 1012, the First Circuit affirmed dismissal of a similar association or endorsement claim. In that case two

---

8. *See,* n. 4, *supra.*

9. The affidavit contains assertions which are essentially identical to the allegations contained in the Proposed Amended Complaint, ¶¶ 18–34, in support of the plaintiff's proposed Count IV for invasion of privacy based on unreasonable intrusion upon the seclusion of another. The dismissal, in reliance on the First Amended Complaint, analyzed the invasion of privacy claims based on false light and commercial appropriation claims. Thus the affidavit is irrelevant to the dismissal.

10. The Amended Complaint states that the plaintiff did not authorize the defendants "to concoct the statements made by them, to print these stories, to use his name or appropriate his like-

ness or to profit by these stories," ¶ 7; that the defendants gave "unreasonable and highly objectionable publicity ... that attributed [to the plaintiff] characteristics, conduct, beliefs and statements that were false and so placed him in a false position before the public"; and that for the purpose of selling their products the defendants "have appropriated further benefit ... from the plaintiff's name, likeness and alleged words ... without the plaintiff's prior knowledge or consent and have implied to the public that the plaintiff endorsed their use of him and endorses their publications," ¶ 8. The endorsement issue, therefore, appears to be part of the commercial appropriation claim rather than the false light claim.

schoolgirls alleged that the publication in *Penthouse,* a sexually explicit men's magazine, of a news article and photograph about their elementary school implied their consent and endorsement of *Penthouse's* editorial views. The *Fudge* court dismissed this claim because the magazine clearly attributed the article and photograph to another news source. *Fudge* at 1019.

The *NE* article in question creates the impression that the quoted statements were given to the newspaper by sources described variously as "a friend," "an airport official," and "a neighbor," and not directly by the plaintiff.[11] The plaintiff argues that to an average reader the article implies cooperation, consent or endorsement. Although "friends," "airport officials" and "neighbors" are not regarded as official news sources, *cf. Fudge,* a common sense reading of the article leads to the conclusion that *NE* was at least attempting to identify the news source as someone other than the plaintiff. For purposes of argument, however, even if the article could imply that the plaintiff consented to publication, the Amended Complaint fails to state a claim that association *per se* with *NE* would be highly objectionable to a reasonable person.

In support of his argument, the plaintiff relies on *Douglass v. Hustler Magazine, Inc.,* 769 F.2d 1128, 1135–36 (7th Cir.1985), and *Braun v. Flynt,* 726 F.2d 245 (5th Cir.1984). The crucial difference, however, between these cases and the case before this court is the difference between the sexually explicit and exploitive nature of *Hustler* and *Chic* magazines and the nature of *NE.* In *Douglass,* a plaintiff alleged that *Hustler's* unauthorized publication of nude photographs of herself implied a seemingly voluntary association with

*Hustler* which was degrading. After describing the contents of the magazine, the court concluded that it had been reasonable for the jury to find that the magazine was sexually offensive and that "to be depicted as voluntarily associated with [*Hustler*] ... is unquestionably degrading to a normal person, especially if the depiction is erotic...." *Douglass* at 1136. Similarly, in *Braun,* the Fifth Circuit found it reasonable to conclude that "the ordinary reader automatically will form an unfavorable opinion about the character of a woman whose picture appears in *Chic* magazine" since *Chic* is "devoted exclusively to sexual exploitation and to disparagement of women." *Braun* at 254.

The Amended Complaint makes no similar allegations regarding the offensive nature of *NE,*[12] and without such an allegation the plaintiff has failed to state a claim that, apart from the article itself, association with *NE* placed him in a false light which would be highly objectionable to a reasonable person. The court thus finds no reason to disturb its prior finding that *NE*'s publication of the article about the plaintiff did not place the plaintiff in a false light that would be highly offensive to a reasonable person.

The plaintiff's last argument is that the court erred in interpreting the law on commercial appropriation to mean that any use by the media of a person's picture or name would always be "incidental" and therefore could never be a basis for liability. Plaintiff's Memorandum in Support of the Motion to Reconsider, page 9. In fact, the Order of Dismissal concluded that the plaintiff had failed to state a commercial appropriation claim because he had failed to allege anything more than the fact that *NE* is motivated by the desire to sell newspapers and to make a profit. It stands to

---

**11.** As noted in the Order of Dismissal, page 5, the article contains approximately 33 short paragraphs, 21 of which purport to be quotations from the plaintiff regarding his physical sensations, thoughts and fears during the time he was clinging to the door rails of the plane and during the emergency landing.

**12.** The affidavit of Robert N. Steele, submitted with the motion for reconsideration, indicates

that the plaintiff is relying on expert opinion that *NE* is a sensationalist tabloid without serious journalistic standards. In his memorandum, the plaintiff argues that *NE* is the "newspaper analogue of *Hustler.*" Consideration of matters outside the pleadings, however, is inappropriate in determining or reconsidering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and thus the court does not consider this affidavit.

reason that newspapers are in the business of selling news, and the court does not seriously entertain the plaintiff's argument that his September, 1987 emergency landing at the Portland Jetport was not a newsworthy event. A claim based on commercial appropriation must allege that a name or likeness has been used for purposes of taking advantage of that individual's

> reputation, prestige or other value for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication of a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

*Restatement (Second) of Torts* § 652 C, commend d. Thus it is conceivable that the plaintiff could have stated a claim for commercial appropriation if he had alleged that *NE* had used his name and likeness in an advertising campaign to boost sales, or if *NE* had permitted one of its advertisers to use the plaintiff's name and likeness. No such allegation was made here, and the court therefore finds no reason to disturb its prior finding that the Amended Complaint failed to state a claim upon invasion of privacy based on commercial appropriation.

Accordingly, the court DENIES the plaintiff's motion to amend and the plaintiff's motion for reconsideration.