Henry **DEMPSEY**, Plaintiff,

v.

The **NATIONAL ENQUIRER**, et al., Defendants.

**Civ. No. 88–0106–P.**

United States District Court, D. Maine.

Jan. 3, 1989.

William Robitzek, Paul Macri, Lewiston, Me., for plaintiff.

John W. Bernotavicz, John Gleason, Portland, Me., Neal M. Goldman, Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

GENE CARTER, District Judge.

The remaining defendant in this case, News America Publishing, Inc. (News America) which publishes the *Star* magazine, has moved to dismiss [1] the Amended Complaint, which alleges that the *Star*'s publication of an article about the plaintiff invaded his right to privacy by placing him in a false light and by appropriating his likeness and words for commercial profit.[2] For the reasons stated below, the court DENIES the motion as to the false light claim and GRANTS the motion as to the commercial appropriation claim.

The *Star*'s September, 1987 article in question concerned the plaintiff Henry Dempsey's harrowing escape from injury or death when he fell out of a small airplane while in flight but clung to the open boarding ladder of the plane, surviving his co-pilot's emergency landing with only a few scratches. The article is prefaced by a short third person narrative of the event which concludes: "Here, Dempsey, who has been a pilot for more than 20 years, tells in his own words how he found himself suddenly thrust into the ultimate daredevil stunt." The by-line "by Henry Dempsey" then introduces a dramatic first person narrative which includes quoted statements representing his purported reactions.[3]

The plaintiff does not deny that he indeed fell out of a plane and survived in the manner described. In the Amended Complaint, however, he states that the *Star* neither interviewed nor obtained information from him. He further states that he "did not authorize the [*Star*] "to concoct the statements made ..., to print [this story], to use his name or appropriate his likeness or to profit by [this story]," ¶ 7; that the defendant gave "unreasonable and highly objectionable publicity ... that attributed [to the plaintiff] characteristics, conduct, beliefs and statements that were false and so placed him in a false position before the public"; that for the purpose of selling [its] products the defendant has "appropriated further benefit ... from the plaintiff's name, likeness and alleged words

---

1. In his motion for expedited hearing, the plaintiff refers to News America's motion for summary judgment. The record, however, contains only a motion to dismiss. The court here notes that the plaintiff has submitted three affidavits in connection with his objection to the motion to dismiss of News America and its former co-defendant, *The National Enquirer*. Consideration of matters outside the pleadings, however, is inappropriate in determining a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and thus the court does not consider these affidavits.

2. On June 28, 1988 the court granted a similar motion to dismiss on the part of the co-defendant *The National Enquirer* and has recently denied the plaintiff's motion to reconsider that decision. *See* Memorandum of Decision and Order Granting the Defendant National Enquirer's Motion to Dismiss, June 28, 1988; Memorandum of Decision and Order denying the plaintiff's motion for reconsideration and motion to amend the Amended Complaint, December 20, 1988, 702 F.Supp. 927.

3. Exhibit A, Defendant News America's memorandum in support of its motion to dismiss.

 For example, in portraying the moments after the plaintiff had fallen and then grabbed the boarding ladder, the article reads:
 "This is it, pal. You're a goner." We were flying at about 2,500 ft. above the ocean, and I was hanging face-down out of the rear passenger door, just kind of twitching in the slipstream like a bit of old rag.
 It was crazy. One minute I'd been checking the door for a rattle. The next thing I knew the door had burst open and I was being sucked out of the plane.
 Only an instinctive grab for a rail on the passenger stairway stopped me from being sucked all the way out.
 Below me, I could see the Atlantic Ocean.
 "You're fish bait, pal," I said to myself. That's all I could think about at first as the plane lurched and bounced in the wind—not a big wind by ordinary standards, but when you're hanging out of an aircraft clipping along at 180 mph, any wind is big.

... without the plaintiff's prior knowledge or consent and [has] implied to the public that the plaintiff endorsed [its] use of him and endorses [its] publications," ¶ 8; that the defendant's "conduct was based on a wrongful motive and state of mind, ill will, which constituted malice ... [and], moreover was so outrageous that malice towards the plaintiff is also implied," ¶ 9; and that as a result of the publication he suffered mental distress, public humiliation and embarrassment for which he seeks compensatory and punitive damages. The defendant does not deny that it published the story without interviewing or obtaining consent from the plaintiff;[4] thus it impliedly concedes that it falsely ascribed both the by-line and the quoted portions to the plaintiff.

### False Light Invasion of Privacy

 This is a diversity action and the court therefore looks to Maine law for the elements of a false light invasion of privacy claim; through *Nelson v. Maine Times,* 373 A.2d 1221, 1223–24 (Me.1977), Maine has adopted the requirements of the *Restatement (Second) of Torts* § 652E (1977). Under the *Restatement,* the right of privacy is invaded, in relevant part, by publicity that places another person in a false light which would be highly offensive to a reasonable person, when the publisher had knowledge of or acted in reckless disregard as to the falsity of the publication and the false light in which the individual would be placed. *Restatement supra,* § 652E, p. 394.

> "The interest protected ... is the interest of the individual in not being made to appear before the public ... otherwise than as he is.... It is not, however, necessary to the action ... that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him char-

acteristics, conduct or beliefs that are false, and so is placed before the public in a false position."

*Id.,* p. 395. The publicity must do more than place the plaintiff in a false position; it must be highly offensive to a reasonable person. Thus an individual's privacy is not invaded "when *unimportant* false statements are made," even if deliberately made. *Id.,* p. 396 (emphasis added). There must instead be "a major misrepresentation of his character, history, activities or beliefs." *Id.*

This issue comes to the court in the context of a motion to dismiss. Thus the court must construe all factual allegations in the complaint in favor of the plaintiff and decide whether, as a matter of law, the plaintiff could prove any set of facts which would entitle him to relief. Fed.R.Civ.P. 12(b)(6); *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987); 5 Wright & Miller, *Federal Practice and Procedure* § 1357 (1969). The question here, therefore, is whether under the *Restatement* guidelines and the allegations of the complaint, the plaintiff could possibly prove that the *Star*'s use of Mr. Dempsey's by-line and falsely-ascribed quotations placed him before the public "otherwise than as he is," and attributed to him false characteristics, conduct or beliefs which significantly misrepresented his character in a manner which would be highly offensive to a reasonable person.

The First Circuit Court of Appeals has recently ruled on a false light invasion of privacy claim. In *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988),[5] the plaintiffs, four schoolgirls aged 8–12, alleged a false light invasion of privacy based on the publication in *Penthouse,* a sexually explicit magazine, of a photograph of the plaintiffs and an article regarding segregated public elemen-

---

**4.** In its Pretrial Memorandum, the defendant states the plaintiff did give an exclusive interview to John Impemba of the *Boston Herald,* that the *Star* assigned the Dempsey story to Peter Williams, a freelance reporter residing in Texas, and that Mr. Williams subsequently contacted Mr. Impemba as well as other sources

before writing the article. Pretrial Memorandum of Defendant News America Publishing, Inc., p. 2.

**5.** There is no Maine case which specifically tests the offensiveness of a publication in a false light invasion of privacy claim.

tary school recesses. The girls argued that the article implied that they were masculine and wished to dominate their male schoolmates, and that as a result their school instituted sexually segregated recesses. Relying on the Rhode Island statute under which the action had been brought, as well as *Restatement* principles, the First Circuit concluded that these allegations, even if true, would not as a matter of law, " 'be objectionable to the ordinary reasonable man under the circumstances.' " *Fudge* at 1019. The alleged false light in *Fudge*, however, rested on an implication drawn from the editorial text, and not, as in this case, on a by-line and quotations unequivocally and, it is alleged, falsely attributed to the plaintiff.

The facts in this case are closer to those of a 19th century case which first gave rise to the cause of action for false light invasion of privacy. In *Lord Byron v. Johnston*, 35 Eng.Rep. 851 (1816), the poet Byron succeeded in enjoining a publisher who had advertised for sale certain poems that were falsely ascribed to Byron. *See Prosser and Keeton on Torts* § 117, p. 864 (1984). Moreover, the Second Circuit Court of Appeals has recognized that under some circumstances a tabloid article containing falsely-ascribed quoted material may support a claim for false light invasion of privacy. In *Varnish v. Best Medium Publishing Co., Inc.*, 405 F.2d 608 (2nd Cir. 1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1465, 22 L.Ed.2d 762 (1969), the subject of the claim was an article about the plaintiff's wife's murder of their three children and her subsequent suicide. There was no dispute regarding the fact that the wife did murder her children and commit suicide. The article, however, fictionalized the plaintiff's relationship with his wife and misrepresented the contents of the suicide note. Noting that "minor inaccuracies and fictionalized dialogue will not alone defeat the privilege granted to truthful publications of public interest," and that the lower court had correctly instructed the jury to ignore such minor inaccuracies and fictionalized

dialogue, the court ruled that in that case the evidence supported the jury's finding that the article was materially false as a whole. *Varnish* at 612.

In this case, the defendant argues that it has a First Amendment privilege to publish truthful accounts of public interest events, and that even if the *Star* article contained inaccuracies or fictionalized dialogue, it was not false as a whole since there is no dispute regarding the occurrence of the event itself. It is true that the *Star* article is essentially accurate in its depiction of the sequence of events which befell the plaintiff. It is also true that the article which appeared in *The National Enquirer* likewise contained quoted material alleged to be falsely ascribed to the plaintiff. The court has dismissed the plaintiff's claim against *The National Enquirer* based on its threshold determination that any false impression of the plaintiff created by the article would not be highly offensive to a reasonable person. Relying on this determination as well as the absence of any allegation in the complaint regarding the inherent offensiveness of *The National Enquirer*, the court has also found that even if, for purposes of argument, that article could be read to imply the plaintiff's consent to publication, mere association of the plaintiff with *The National Enquirer* was not enough to establish a false light invasion of privacy claim. Order Denying the Plaintiff's Motion for Reconsideration, December 20, 1988. The *Star* article, however, differs significantly from *The National Enquirer* article in that the former unequivocally attributes authorship to the plaintiff.[6] This unequivocal attribution creates a much closer question regarding the extent to which the plaintiff consented to publication or was portrayed "otherwise than as he is," the material falsity of the article as a whole, the false light created by association with the publication, and the degree of offensiveness to a reasonable person. *Restatement, supra,* § 652E, comment b, p. 395. *Lord Byron v. Johnston,*

---

**6.** In addition, the allegedly false portions of the *Star* article which purport to represent the plaintiff's thoughts and reactions seem more intrusive than the analogous portions of *The National Enquirer* article.

35 Eng.Rep. at 851; *Varnish v. Best Medium Publishing Co.,* 405 F.2d at 612. *See also Jonap v. Silver,* 1 Conn.App. 550, 474 A.2d 800, 805–06 (1984) (court affirmed a jury verdict finding that the publication of a letter signed with the plaintiff's name but without his consent constituted a false light invasion of privacy, stating that "it is not whether ... the assertions [in the letter] are true, but whether [they] are in truth those of the plaintiff.")

In its Order granting *The National Enquirer*'s motion to dismiss, this court relied on *Fudge v. Penthouse Int'l,* 840 F.2d at 1018–19 in determining that the allegedly false portions of *The National Enquirer*'s article were not capable of implying the highly objectionable quality required in an action for false light invasion of privacy. The Maine Law Court has similarly held that in evaluating outrageousness in an intentional infliction of emotional distress claim "[i]t is for the Court to determine in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so." Only "where reasonable men may differ" must the court turn the question over to a jury. *Rubin v. Matthews Int'l Corp.,* 503 A.2d 694, 699 (Me.1986). Here, the court finds that reasonable persons may differ on whether, in the factual context of this case, false attribution of authorship would be highly offensive to a reasonable person. Thus the issue is not appropriate for resolution at this stage of the proceedings and the court DENIES the defendant News America's motion to dismiss the false light invasion of privacy claim.

### Commercial Appropriation

█ The plaintiff has also alleged that the defendant News America has invaded his privacy by appropriating his likeness and words for commercial profit and not for the purpose of relating to the public a newsworthy event. In its Order granting *The National Enquirer*'s motion to dismiss, this court concluded that the plaintiff had failed to state a commercial appropriation claim because he had failed to allege anything more than the fact that *The National Enquirer* is motivated by the desire to sell newspapers and to make a profit. The claim against the defendant News America fails for the same reason.

A claim based on commercial appropriation must allege that a name or likeness has been used for purposes of taking advantage of that individual's

> reputation, prestige or other value for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication of a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

*Restatement (Second) of Torts* § 652 C, comment d. Thus it is conceivable that the plaintiff could have stated a claim for commercial appropriation if he had alleged that the *Star* had used his name and likeness in an advertising campaign to boost sales, or if the *Star* had permitted one of its advertisers to use the plaintiff's name and likeness. No such allegation is made here.

It stands to reason that newspapers are in the business of selling news, and the court does not seriously entertain the plaintiff's argument that his September, 1987 emergency landing at the Portland Jetport was not a newsworthy event. Moreover, the fact that the plaintiff may be able to succeed on his false light invasion of privacy claim does not affect the resolution of this issue. Accordingly, the court GRANTS the defendant News America's

motion to dismiss the plaintiff's claim of invasion of privacy based on commercial appropriation.