**Mitchell CARRIER, et al., Plaintiffs, Appellants,**

v.

**RIDDELL, INC., et al., Defendants, Appellees.**

No. 83–1053.

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1983.

Decided Nov. 23, 1983.

Jay Stephen Bronstein, Sharon, Mass., with whom Howard S. Ross, and Shuman & Ross, P.C., Boston, Mass., were on brief, for plaintiffs, appellants.

Elizabeth A. Sharawara, with whom Philip M. Davis, Valerie N. Mauro, and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for Riddell, Inc.

Before COFFIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Plaintiff Mitchell Carrier is a high school student who suffered a severe spinal injury playing football. He and his mother sued several football helmet makers, arguing that they negligently failed to warn his team that helmets do not offer much protection to a player's neck and spine. During discovery the parties established that the plaintiff wore a helmet made, not by Riddell, but by some other manufacturer. At that point the district court granted summary judgment in favor of Riddell, specifying that it was a final judgment so that plaintiff could appeal, despite the existence of their ongoing claims against other helmet makers. Fed.R.Civ.P. 54(b).

Plaintiffs appeal here arguing that this summary judgment was improper because they can prove 1) that other players on the team wore Riddell helmets, 2) that Riddell was negligent in not providing a general warning about a helmet's limitations, and 3) that, had Riddell done so, Carrier would have heard the warning and taken additional precautions, preventing the tragic accident. Even if they prove all this, however, we nonetheless believe that Massachusetts tort law, which governs this case, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), bars recovery against Riddell.

* Of the Eighth Circuit, sitting by designation.

Contrary to some of the arguments here presented, we do not believe that plaintiffs' problem is necessarily one of "causation." We shall assume, for the sake of argument, that if Riddell had warned the team members who wore Riddell helmets, Carrier would have heard the warnings too. We shall assume that Riddell could have "foreseen" this fact. *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). And, we view the factual issues involving warnings and instructions as if decided in plaintiffs' favor; thus we shall assume that plaintiff can prove that Riddell was negligent in failing to warn the team members who used its product. *Restatement (Second) of Torts* § 388. Still, the plaintiff must establish that the defendant owed the *plaintiff* a duty not to behave negligently. *Mounsey v. Ellard,* 363 Mass. 693, 695, 297 N.E.2d 43, 45 (1973); *Carter v. Yardley & Co.,* 319 Mass. 92, 96, 64 N.E.2d 693, 696 (1946); *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. at 341–43, 162 N.E. at 99–100; *Restatement (Second) of Torts* § 281. The existence of a duty is typically a question of law, not of fact. W. Prosser, *Law of Torts* 206 (1971); *Federal Express Corp. v. State Department of Transportation,* 664 F.2d 830, 835 (1st Cir.1981): *Welch v. Heat Research Corp.,* 644 F.2d 487, 489 (5th Cir.1981); *Waterbury v. Byron Jackson, Inc.,* 576 F.2d 1095, 1097 (5th Cir.1978). And, it is at this point that Carrier's use of a *different* non-Riddell helmet takes on conclusive legal significance.

Speaking in terms of classical tort principle, when one claims that negligence lies in the *commission* of an act, a defendant's duty not to behave negligently typically extends to include all those whom the defendant might reasonably have foreseen to be potential victims of the negligence. *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. at 341–43, 162 N.E. at 99–100; *Restatement (Second) of Torts* § 281. But where negligence consists of an *omission* —a *failure* to act—a defendant's duty not to act negligently is more limited. It extends to those who have relied in some

special way upon the defendant, to those whom defendants have helped to place in a position where they are likely to depend upon his avoiding negligent omissions. *See Restatement (Second) of Torts,* §§ 314–324A; F. Harper & F. James, *The Law of Torts* 1044–53 (1956); W. Prosser, *supra,* at 338–50. Thus, a passerby seeing a man drown in a pond may have a *moral* obligation to extend a helping hand, but he does not necessarily have a *legal* obligation to do so. *Osterlind v. Hill,* 263 Mass. 73, 160 N.E. 301 (1928); *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343 (1959); *Handiboe v. McCarthy,* 151 S.E.2d 905 (Ga.App.1966); *Restatement (Second) of Torts* § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."). If, however, the presence of the passerby, say, in the costume of a lifeguard, reasonably led the drowning man to go for a swim, the passerby might then be obliged to make efforts to help. *See* W. Prosser, *supra,* at 341; F. Harper & F. James, *supra,* at 1048–49; *Restatement (Second) of Torts* § 314A (special relations giving rise to duty to aid or protect).

■ This basic, simplified account of general principle suggests that Riddell owes no duty to Carrier. Carrier is complaining about an omission, a failure to warn. Carrier does not allege any special actions or special relationships that might reasonably have led him to rely especially upon Riddell. In the absence of some special circumstance one would expect a purchaser or a user of a product to rely for warnings upon the maker of the product they buy or use, not upon the maker of another, similar product. Thus, it is not surprising that every legal source to which we have turned suggests that Riddell owes Carrier no duty of the sort at issue here.

For one thing, the *Restatement (Second) of Torts* says that those who supply chattels have a duty to warn "those whom the supplier expects to use the chattel . . . or to be endangered by its probable use." *Restatement (Second) of Torts* § 388. The commentary to the section adds that liability "exists only if physical harm is caused by the use of the chattel by those for whose use the chattel is supplied." *Id.,* comment e. The *Restatement* says nothing about liability for injury caused those who do *not* use the chattel, but instead use a chattel of a similar type supplied by a different maker.

For another thing, we have researched Massachusetts law and can find no case imposing liability upon a manufacturer (for failure to warn) in favor of one who uses the product of a *different* manufacturer. The case that plaintiffs cite as most favorable to their contention, *Newlin v. New England Telephone & Telegraph Co.,* 316 Mass. 234, 54 N.E.2d 929 (1944), is very different. In that case defendant's telephone pole fell and broke a power line bringing a third firm's electricity to plaintiff's mushroom plant. The Supreme Judicial Court held that the defendant owning the pole had a duty of care to the plaintiff even though a different firm delivered plaintiff's electricity. *Newlin*'s discussion of the defendant's negligent interference with plaintiff's use of electric power, however, suggests that the court saw a commission, not an omission, at the heart of the case. Moreover, the court may have considered the pole an essential element of the *Newlin* plaintiff's receiving service in the first place; if so, the special relationship needed to supply the "duty" in cases of omission was apparent. Regardless, the court's discussion in *Newlin* does not suggest that Massachusetts would find a duty in the case of an omission without significant reliance on the defendant's prior actions, as is the circumstances present here.

Finally, there are various Massachusetts "warning cases," the language of which suggests a duty of care runs to those who buy or use the product itself, not a different maker's product. *See Killeen v. Harmon Grain Products, Inc.,* 11 Mass.App. 20, 413 N.E.2d 767, 770 (1980) ("Negligence, in products liability cases, typically consists of failure in the design, manufacture, or inspection or failure to warn the *user* of the dangers which he is apt to encounter in

using the product.") (emphasis added); *Wolfe v. Ford Motor Co.,* 6 Mass.App. 346, 376 N.E.2d 143, 145 (1978) ("The duty of the manufacturer to warn of the dangers in the use of his product is well established; it is applicable to hazards involved in the use of properly designed products by *users* to whom the danger would not be apparent.") (emphasis added). Numerous other authorities have made similar statements. *See, e.g., Johnson v. Murph Metals, Inc.,* 562 F.Supp. 246 (W.D.Tex.1983); Swartz & Swartz, *Products Liability in Massachusetts,* 60 Mass.L.Q. 169, 176 (1975); Dillard & Hart, *Product Liability: Directions for Use and the Duty to Warn,* 41 Va.L.Rev. 145, 155 (1955).

In sum, the state of the case law, together with our understanding of general tort principle, convinces us that, even though the Massachusetts courts have not focused precisely upon the issue presented here, they would find no "duty of care" to one who did not use Riddell's product. Therefore, there is no tort liability. *Newlin v. New England Telephone & Telegraph Co.,* 316 Mass. at 236, 54 N.E.2d at 931 ("if the defendant owed no duty of care to the plaintiff ..., there could be no actionable negligence on its part").

The judgment of the district court is *Affirmed.*