**Joseph and Lynn SENESE, Plaintiffs,**

**v.**

**David PEOPLES and S & L Pinehurst Lodge, Inc., Defendants.**

Civ. No. 84–0965.

United States District Court,
M.D. Pennsylvania.

May 23, 1985.

Arthur L. Pressman, Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for plaintiffs.

Cody H. Brooks, Timothy E. Foley, Scranton, Pa., John H. Klemeyer, Beecher, Wagner, Rose & Klemeyer, Milfore, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

. Plaintiffs filed this diversity action on July. 31, 1984, as a result of injuries sustained when Joseph Senese attempted to exit the cab of Defendant Peoples's truck. On February 15, 1985, Defendant Peoples filed a Motion for Summary Judgment and brief in support thereof. The plaintiffs filed a Brief in Opposition to the motion dated March 22, 1985 and Defendant Peoples filed a reply brief dated March 28, 1985. Both parties have also submitted letters to the court responding to arguments made by their opponent. The motion is now ripe for disposition. For the

---

reasons set forth below, the court will grant the defendant's motion.

This action arises out of injuries sustained by Joseph Senese when he fell out of or off a motor vehicle on September 17, 1983. Immediately prior to this incident, Senese and Peoples had been drinking alcoholic beverages at the Defendant Pinehurst Lodge. They left the Pinehurst Lodge at approximately 4:00 P.M. and proceeded south on Route 519 in Peoples' pickup truck operated by Peoples with Senese seated as a passenger. While the vehicle was in operation, Senese attempted to exit the cab of the truck, whereupon he fell to the pavement. The plaintiff alleges Senese attempted to exit the truck through an open window on the passenger side of the vehicle and that Peoples did not attempt to brake his vehicle or restrain the plaintiff until after Senese had fallen out of the window. The plaintiff further contends that at the time of the incident Peoples was driving erratically and/or at an excessive rate of speed. Defendant Peoples, however, avers that Senese fell from the cab of the truck while climbing out the window from the front of the truck in order to reach the back. Peoples also contends that he was not traveling erratically or at an excessive rate of speed and that he immediately brought his vehicle to a stop when he realized what had happened.

The elements necessary to maintain a negligence action include: "[1] a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; [2] a failure to conform to the standard required; [3] a causal connection between the conduct and the resulting injury and [4] actual loss or damage resulting to the interests of another." *Morena v. South Hills Health System*, 501 Pa. 634, 642 n. 5, 462 A.2d 680 (1983). Therefore, the plaintiff must first establish that the defendant breached a duty of care owed to the plaintiff in order for this action to be continued. Where the defendant's alleged negligence consists of a failure to act, the duty not to act negligently is quite limited. "It extends to those who have relied in some special way upon the defendant, to those whom defendants have helped place in a position where they are likely to depend upon his avoiding negligent omissions.... Thus, ... [one] may have a *moral* obligation to extend a helping hand [under particular circumstances], but he does not necessarily have a legal obligation to do so." *Carrier v. Riddell, Inc.*, 721 F.2d 867, 868–69 (1st Cir.1983) (emphasis in original). *See also Yania v. Bigan*, 397 Pa. 316, 321–22, 155 A.2d 343 (1959); Restatement (Second) of Torts §§ 314, 314A (1965).

The Restatement (Second) of Torts Section 314 which has been adopted in Pennsylvania, *see Yania v. Bigan*, 397 at 322, 155 A.2d 343, states: "Duty to Act for Protection of Others[:] The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." *Id. See also Yania v. Bigan*, 397 Pa. at 322, 155 A.2d 343. The comments to this section indicate that this general rule applies "irrespective of the gravity of the danger to which the other is subjected and the insignificance of the trouble, effort, or expense of giving him aid or protection." *Id.* § 314 Comment c. The rule, however, does not apply where the peril in which the other is placed is due "to any active force which is under the actor's control." *Id.* § 314 comment d. The Restatement gives the following illustration to explain this principle:

A, a trespasser in the freight yard of the B Railroad Company, falls in the path of a slowly moving train. The conductor of the train sees A, and by signalling the engineer could readily stop the train in time to prevent its running over A, but does not do so. While a bystander would not be liable to A for refusing to give such a signal, the B Railroad is subject to liability for permitting the train to contin-

ue in motion with knowledge of A's peril.[1]

*Id.* § 314 comment d Illustration 3.

There are a number of special relationships which give rise to a duty to aid or protect another. Section 314A of the Restatement lists a number of these special relationships:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid if it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

*Id.* § 314A. The duty even under these situations, however, is only one to exercise reasonable care under the circumstances. "The defendant is not liable where he neither knows or nor should know of the unreasonable risk, or of the illness or injury." *Id.* § 314A comment e.

The defendant here argues that the plaintiff cannot show that Senese breached a duty of care as there is no evidence that Peoples was operating his vehicle negligently. Additionally, Peoples contends that there is no evidence that he committed an act or omission which amounts to breach of duty to prevent the plaintiff from exiting the moving vehicle. The threshold question, however, is whether a duty of care exists here. The parties have thoroughly briefed the issue of duty of care and neither party has submitted to the court any Pennsylvania decisions regarding the duty of care owed by the defendant in a situation such as this. The defendant has submitted one Pennsylvania Supreme Court case in which a passenger fell out of a moving vehicle and the court held that there was no evidence of the defendant's negligence. *See Miller v. Adams,* 394 Pa. 46, 145 A.2d 540 (1958). In the *Miller* case, the driver of the vehicle did not own the vehicle, had no knowledge of any defect in the door's mechanism and had done everything possible to insure the passenger's safety. Therefore, the Court held that judgment in favor of the plaintiff was justified. In another Pennsylvania Supreme Court case involving duty of care, the court determined that there is no legal duty to rescue a person who has voluntarily placed himself in a position of peril. *Yania v. Bigan,* 397 Pa. 316, 155 A.2d 343 (1959). In *Yania,* the decedent, in full possession of his mental faculties, was asked by the defendant to help him in starting a pump. The decedent then deliberately jumped into the water from the side wall of the trench, approximately 10 to 18 feet, and was drowned. The plaintiff widow claimed, *inter alia,* that the defendant's failure to go to the decedent's rescue after he jumped into the water was negligence. The Court found that although there may have been a moral obligation on the part of the defendant to rescue, unless he was legally responsible for placing the decedent in the perilous position, there was no legal duty to attempt to rescue him. *Id.* at 321–22, 155 A.2d 343 (citing Restatement, Torts § 314). *See also Carrier v. Riddell, Inc.,* 721 F.2d 867 (1st Cir.1983).

---

**1.** In the case *sub judice,* there is nothing to show that the defendant could have stopped the vehicle before Senese fell out of the truck. Therefore, this case is distinguishable from the Railroad in the above illustration in that the engineer in the illustration was conscious of the fact tat a person was on the tracks in a position of peril and could have prevented the injury from occurring.

In the case *sub judice*, the only real issues of fact appear to be whether the plaintiff climbed out of the window or exited the vehicle through the door and whether he announced to Peoples that he was going to get into the back of the pickup truck prior to the time he began exiting the vehicle. Whether Peoples could have either stopped the truck or attempted to restrain Senese is an inquiry that can only be made after it is determined that there was a duty on the part of Peoples to act. The relevant case law and general principles of the law of negligence lead the court to conclude that there is, in fact, no duty on the part of a driver of a vehicle to attempt to prevent a passenger from injuring himself when, as here, the passenger has placed himself in a position of peril. Accordingly, there was no legal duty on the part of Peoples to prevent Senese from exiting the vehicle and injuring himself.

Even assuming *arguendo* that the court could find a legal duty on the part of Peoples to prevent Senese from injuring himself, the motion for summary judgment would still be granted. The plaintiff's bald assertion that seventy-nine feet of skid marks would show erratic driving or driving at an excessive rate of speed is simply not supported in the record. The plaintiff has been given an opportunity to demonstrate why the skid marks would establish reckless driving or speeding under the circumstances but neither the trooper's nor the defendant's deposition as submitted to the court carries the plaintiff's burden. Plaintiff must respond specifically to the arguments contained in defendant's summary judgment motion and cannot expect to escape the entry of summary judgment by identifying facts in a vacuum. If the length of skid marks had some factual consequences, or would form the basis for an expert's opinion, then such contentions should be particularized. Additionally, while the court recognizes that there is a conflict as to whether the plaintiff went out the window or door of the defendant's vehicle, there is nothing in the record to indicate that this discrepancy would provide a jury question on the issue of defendant's due care or on proximate cause which would support a verdict for plaintiff if resolved in his favor. Regarding the amount of time Peoples had to restrain the plaintiff, the only relevant evidence comes from Peoples' deposition of September 24, 1984. In his deposition, the defendant indicates plaintiff said "I am getting in back" at the time he opened the door. Therefore, there is no evidence in the record showing Peoples had sufficient time to restrain the plaintiff when he became aware the plaintiff was going to exit the truck. Accordingly, the court will grant the defendant's Motion for Summary Judgment.[2]

An appropriate Order will enter.

---

2. The court need not address the plaintiff's argument regarding the last clear chance doctrine as this theory would not be applicable at this stage in the case. In *Jeng v. Witters,* 452 F.Supp. 1349 (M.D.Pa.1978), *aff'd sub nom.* 591 F.2d 1334 (3rd Cir.1979), Judge Herman explained, "[l]ast clear chance, at least as it was applied in Pennsylvania before the adoption of comparative negligence, only had a place in determining as between two independent tortfeasors whose negligence was the proximate cause of a plaintiff's injury." *Id.* at 1368, citing *Coleman v. Dahl,* 371 Pa. 639, 92 A.2d 678 (1952). Therefore, even if the last clear chance doctrine is still applicable in Pennsylvania after the adoption of comparative negligence, there must first be a duty and a breach thereof before reaching the issue of causation. Since it has already been determined *supra* that there was no duty, and even if there was a duty there was no breach of the duty, the last clear chance argument need not be addressed.