**Olen Ward MURFF, Administrator of the Estate of Dan Allen Murff, Deceased, et al., Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 85–2002.

United States Court of Appeals, Fifth Circuit.

March 31, 1986.

---

Richard R. Stone, Jr., Civ. Div., U.S. Dept. of Justice, James P. Piper, Senior Aviation Counsel, Torts Branch, Washington, D.C., Bob Wortham, U.S. Atty., Beaumont, Tex., for defendant-appellant.

George M. Fleming, Houston, Tex., David A. Slaughter, Texas City, Tex., Kenneth D. McConnico, Webster, Tex., John A. Betts, Houston, Tex., for plaintiffs-appellees.

Charles H. Smith, John R. Browning, Dallas, Tex., for Nat. Aviation Underwriters, Inc.

Before GEE, ALVIN B. RUBIN, and W. EUGENE DAVIS, Circuit Judges.

## PER CURIAM.

Even judges should not take themselves too seriously. Discovery that one has simply misread a trial court finding is of great assistance in recalling this ancient truth to mind. Sua sponte, we withdraw our earlier opinion, substituting the following:

At a bench trial in this Federal Torts Claims Act[1] case, the district court, 598 F.Supp. 290, apportioned fault in a mid-air collision—one that took place under visual conditions—seventy percent to the air traffic controllers and fifteen percent each to two pilots. The United States appeals the consequent judgment against it for damages, contending, among other claims, that this apportionment was clearly erroneous. Concluding that it was, and further concluding that, on the predicate facts found by the trial court, no determination that the controllers were so much as equally at fault with plaintiff's decedents can be supported, we reverse the judgment appealed from and remand for entry of judgment for the United States.

### FACTS

In August 1980 a light airliner on a flight from South Dakota to Dallas collided with a small training plane near Fort Worth. The airliner, a Fairchild F–27 flying under Instrument Flight Rules (IFR), landed successfully. The other, a Cessna 172 flying under visual rules (VFR), fell to earth, carrying instructor and student to their deaths. Both were experienced pilots, the instructor, John Fitzgerald, considerably more so than his pupil, Dan Murff, however.

The Cessna became airborne at about 11:00 a.m. on the morning of the crash and embarked on a catalogue of actions and omissions that substantially increased the likelihood of its occurrence. As the trial court found:

> Murff and Fitzgerald neglected to file a flight plan and did not request flight following or radar service from air traffic control once airborne. Apparently,

1. 28 U.S.C. § 2671.

they did not take the precaution of burning the Cessna's landing light as encouraged by the FAA's "Lights on Program." Supposedly, because of the temperature, Fitzgerald decided to fly above the 5000 foot ceiling recommended by his employer, Acme School of Aviation. Fitzgerald also apparently directed Murff to maneuver near the Bridgeport VOR Station, a frequent intersection point for instrument flight rules (IFR) traffic. Finally, while it is uncertain whether the pilots failed to monitor the radio channel used by IFR traffic in the vicinity, they at least failed to notify the controllers of their location and intentions.

In addition, the court found, because the Cessna was on an instrument training mission, "presumably, student Murff was wearing a 'hood' which restricted his vision to the instruments." And so, shortly after eleven o'clock, we find the Cessna, burning no landing light and with one of its two lookouts blinded, maneuvering at a dangerous altitude in an intersection of aerial traffic without having notified the controllers of what it was about.

The F–27 airliner, by contrast, was flying IFR and under the direction of the controllers, who knew its precise altitude, speed, and direction at all material times. Entering the area of the Bridgeport VOR, the F–27 reported in at 11:20:55 a.m. at an altitude of 19,000 feet and, at 11:25:12, was cleared for descent to 10,000. Six minutes later, it was cleared to 6,000 feet and a position ten miles east of the VOR. At 11:35:48 the controllers warned it of the Cessna's presence:

Fairchild seven whiskey alpha VFR traffic at one o'clock ah four miles southeast bound slow moving altitude unknown.

Thus, although the Cessna could have been at any altitude and the chances of its being on the same exact level as the F–27 were small, the aircraft were approaching each other on near reciprocal courses.

At 11:36:00 the F–27 responded to the traffic advisor:

Ah Whiskey Alpha looking ah no joy[2] we're above a cloud deck here.

Sometime within the next one minute and fourteen seconds, the collision occurred, for at 11:37:14 the F–27 reported it to the controller:

Ah center Fairchild Seven Zero Seven Whiskey Alpha we've just had a mid-air [collision].

As was noted at the outset, the transport was able to land safely following the collision, but the trainer was lost.

## THE DUTIES INVOLVED

■ Although the trial judge made no specific finding that the collision occurred in an area of clear air, free of clouds, other expressions in his opinion make plain—as does the record evidence—that this was the case.[3] In such circumstances, the primary responsibility for avoiding collisions rests with the pilots, not the controller. Numerous authorities so recognize; indeed, the proposition seems generally settled. *In re N–500L cases*, 691 F.2d 15, 28 (1st Cir. 1982), for example, the court observed that, according to regulations having the force of law:

Although air traffic controllers may have responsibilities concurrent with those of the pilot in the terminal area, ... the primary responsibility for avoiding collision and wake turbulence in VFR conditions is with the pilot (citation omitted).

*Accord, United States v. Schultetus*, 277 F.2d 322, 327 (5th Cir.) *cert. denied*, 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56 (1960). It is thus apparent that the primary responsibility for avoiding the fatal collision lay

---

2. "No joy" is airman's slang for no sighting or no contact.

3. Statements of the F–27 crew were that they never entered the clouds, but rather were proceeding from clear air at altitude down through a space between the clouds; and the plaintiff's

expert witness had "no doubt" that the collision took place in visual conditions.

The court's opinion appears to assume that this was the case observing, for example, "both planes were painted white and likely both had clouds behind."

on the Cessna and F–27 pilots, not upon the controllers.

## DEGREES OF FAULT

The trial court found the controllers largely at fault (70%) and the pilots of the trainer mildly and equally so (15% each) in causing the collision. After discussing what it viewed as the controllers' fault, the court proceeded to that of the Cessna pilots:

> The victims themselves, however, were not without fault. As noted above, both were experienced pilots, presumably familiar with safety procedures. Both men failed to exercise reasonable care by advising controllers of their location and intentions, by not requesting flight following or radar service, and by not burning the landing light. Fitzgerald, as the instructor, had an additional responsibility to Murff who, necessarily, was relying on Fitzgerald to keep a lookout while Murff wore the hood. Moreover, Fitzgerald was further negligent in choosing to fly at the collision altitude while near the Bridgeport radial. He further erred in continuing the flight after he learned of the 172's weak transponder signal.[4]

■ In view of the above, we think it apparent that the Cessna pilots were more at fault than the controllers.

In discharging their duty to the F–27, the controllers warned it of the Cessna's presence, giving it all the information that they had: course, speed and location. Its altitude was unknown, and they could do no more; but it was unlikely in the extreme that, as sadly proved the case, the Cessna was at or moving to the exact same twenty or thirty feet of altitude—out of all the fifteen thousand feet or so in which it might have been found—where the F–27 was passing. The odds of such a thing were on the order of three or four hundred to one; too short for nonchalance, but far too long for panic.

The trial court found fault with the controllers' failure, in the one minute or so interval between their first warning and the collision, to again warn the F–27 that the Cessna was in the immediate area and that their courses were converging. We are doubtful that this was negligent at all. The F–27 knew its own course and was warned of the general course and location of the Cessna: four miles, and just to the right of, directly ahead, on a course of southeast. The court speculates in its opinion that the Cessna may have turned or have already been turning toward the F–27 at the time of the warning, but it seems clear, as the court notes elsewhere, that the convergence of the two aircraft was a continuing one. And although the court also criticizes the controllers for not attempting to warn the Cessna as well as the F–27, it had already noted that the Cessna may not have been monitoring the channel used by IFR traffic in the vicinity of the VOR, nor was there much time in which to rabbit possible channels, warning the inattentive of the Fairchild's presence.

■ In sum, it seems all too apparent that it was the rash conduct of the Cessna pilots in choosing to maneuver in a traffic area at a dangerous altitude without landing light, probably half-blind and perhaps deaf as well, that was the root cause of the accident. Their duty to avoid it was the primary one, that of the controllers secondary; and theirs was clearly the greater fault. In such circumstances, there can be no recovery against the United States.[5]

The judgment of the trial court is therefore REVERSED, and the cause is REMANDED with instructions to enter judgment for the United States.

---

**4.** The court had earlier noted that this device, which enhances an aircraft's radar signature, was weak on the Cessna and known to be so.

**5.** The Texas form of comparative negligence permits no recovery against one who is less negligent than the plaintiff. See Article 2212a, Tex.Rev.Civ.Stat. § 1.