**Charles A. VIGILANTE, Plaintiff,**

v.

**PHOENIX MUTUAL LIFE INSURANCE COMPANY, The Mutual Life Insurance Company of New York, Asad Rezvi, and Asad Rezvi and Associates, Defendants.**

Civ. A. No. 88–2086–S.

United States District Court,
D. Massachusetts.

Jan. 9, 1991.

Laurence Field, Posternak, Blankstein & Lund, Boston, Mass., for plaintiff.

Cornelius J. Moynihan, Jr. and Gregory P. Deschenes, Peabody & Brown, Boston, Mass., for defendant Phoenix Mut. Life Ins. Co.

Joseph F. Ryan and Stephen A. Roach, Lyne, Woodworth & Evarts, Boston, Mass., for defendants Mutual Life Ins. Co. of New York.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

SKINNER, District Judge.

This is an action by a policyholder against two insurance companies and an

insurance agent for misrepresentation, negligence, and violations of M.G.L. Chapters 93A and 176D. The defendant The Mutual Life Insurance Company of New York ("MONY") has moved for summary judgment. The defendant Phoenix Mutual Life Insurance Company ("Phoenix") has moved for partial summary judgment.

*MONY's Motion for Summary Judgment*

*Background*

On June 26, 1979, defendant Asad Rezvi ("Rezvi") applied to be an insurance agent with MONY. On MONY's career contract application, Rezvi answered "no" to the question: "Have you ever been involved in any legal action i.e.; lawsuits, convictions, bankruptcy, judgements, etc.?" On the same day that Rezvi filled out the MONY application, MONY hired Equifax Services to conduct a background investigation of him. The report prepared by Equifax Services states:

> The applicant is well regarded by his neighbors and considered to be an individual of integrity.... The applicant has a good reputation for paying his bills on time and meeting his committments [sic]. Life style is considered to be consistent with his income and there is no evidence of any business failures, or business or personal bankruptcies. No outstanding suits, judgements or liens pending against the applicant and there is no evidence of any significant unpaid debts.

(Mohr, Exhibit A)

On July 3, 1979, MONY submitted an application to the Commissioner of Insurance of Massachusetts to obtain a license for Rezvi pursuant to M.G.L. c. 175, § 163. The application form in use in 1979 contained two sections. The top half of the application, to be completed by the company, certified that an official of the company had "made an investigation as to the character and ability" of the proposed agent and was "satisfied that he is a suitable person to act as agent of said company."[1]

The bottom half of the application, to be completed by the applicant, asked the applicant about past employment and insurance licenses, but not about arrests or convictions. The 1979 form did not require either the company or the applicant to report any changes in the answers given. (Rice Aff. ¶ 4 and Exhibits D & E; Ianelli Dep. Vol. I at 32–33 & Exhibit 1–2) The Commissioner issued Rezvi an agent's life insurance license, effective July 6, 1979. Rezvi served as a field underwriter for MONY until he resigned on June 1, 1984.

During Mr. Rezvi's tenure at MONY, Mr. Vigilante purchased two life insurance policies from him. In August 1979, Mr. Vigilante purchased his first life insurance policy with Rezvi. In October 1983, Mr. Vigilante replaced his original policy with a MONY Executive Equity Policy with a face value of $210,000. In December 1983, Vigilante increased the face value to $420,000. For both of these policies, Vigilante paid monthly premiums directly to MONY by check or automatic deduction from his bank account. (Vigilante Dep. Vol. I, at 114–115, 118–120, and 125–128) In a letter dated June 5, 1984, Mr. Vigilante wrote to MONY that he wished to cancel his insurance policy. He asked MONY to give him a premium refund of $4,859.05. MONY claims that it paid the surrender refund directly to Mr. Vigilante. (Mohr Aff. ¶ 8) According to Mr. Vigilante, he never received the refund directly; it was rolled over into his new Phoenix policy. (Vigilante Dep. Vol. I, at 136)

Mr. Vigilante concedes that he incurred no loss on any of his MONY policies. (Vigilante Dep. Vol. I., at 115–116, 125; Plaintiff's Answers to MONY's Interrogatories, No. 6) The plaintiff's sole claim against MONY is that its failure to investigate Rezvi's criminal past and to report to policyholders and the Commissioner of Insurance caused the plaintiff to continue dealing with Rezvi, eventually resulting in losses on his Phoenix policy. The plaintiff

---

**1.** MONY claims that it never filled out the top half of the application for Rezvi's license. The plaintiff claims that since the license was issued, an inference may be drawn that MONY did submit a completed application to the Commissioner, based on the testimony of Ianelli, a licensing official for the Division.

admits that he incurred no losses whatsoever until his relationship with MONY had ended.

Throughout Rezvi's tenure as MONY's licensed agent, MONY made a series of disturbing discoveries about Rezvi's past. Sometime in late 1979 or early 1980, Rezvi told his MONY superiors that several years before joining MONY he had submitted a bogus baggage claim to an airline. Subsequently, Rezvi told one of his superiors that he had been placed on probation for this offense. MONY did no further investigation of the matter, and did not disclose the information to the Insurance Division or to Rezvi's customers.

In June 1982, MONY received a letter from the National Association of Securities Dealers. Attached to the letter was a report from the United States Department of Justice stating that Rezvi had been convicted on two counts of mail fraud in February 1980. MONY admits that until September 1987, it informed neither the Division of Insurance nor Rezvi's customers of Rezvi's convictions.

Also in 1982, MONY received a complaint from other customers named Cameron, who had purchased a policy through Rezvi. The Camerons claimed that their signatures had been forged on a form authorizing loans to be taken out against their policy. MONY did not report this complaint to the Division until October 1987.

In May 1986, MONY notified the Commissioner of Insurance that one of Rezvi's customers, Dr. Roy Tarr, had sued MONY for a fraud committed by Rezvi. Mr. Vigilante claims that by May 1986, MONY knew that five serious complaints had been lodged about Rezvi, but it chose to report only one to the Division. Between August 4, 1986 and June 2, 1987, the Division issued seven new agent's licenses to Rezvi for seven additional companies. In September 1987, Mr. Vigilante became one of at least six people who complained to the Division about Rezvi. The Division began an investigation of Rezvi and, after a hearing on January 30, 1989, revoked Rezvi's license.

MONY failed to notify the Division of the other frauds until October 1987. Mr. Vigilante claims that MONY made its October report only because the Insurance Division had informed it of a new series of frauds perpetrated by Rezvi.

*Discussion*

Summary judgment "is a useful device for ... putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2nd Cir.1980). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The opponent, on the other hand, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted). An issue is "genuine" if a reasonable finder of fact could find for the opponent on the evidence presented, and "material facts" are those that might affect the outcome of the litigation under the applicable substantive law. *Id.* The court must view the record in the light most favorable to the opponent of the motion and must indulge all inferences favorable to that party. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). However, "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).[2]

 Count II of the plaintiff's complaint alleges that MONY breached duties

---

**2.** Plaintiff apparently relies on the more restrictive view of summary judgment which obtains in the courts of the Commonwealth.

to the plaintiff and the public to disclose the facts it learned about Rezvi's past criminal and dishonest conduct. The plaintiff's first argument is that MONY breached its duty to investigate Rezvi's character before submitting the license application to the Commissioner of Insurance. The plaintiffs rely on a Massachusetts case for the proposition that MONY "vouched for the character of" its agent when it submitted the license application pursuant to M.G.L. c. 175, § 163. *See New England Acceptance Corporation v. American Manufacturers Mutual Insurance Company*, 4 Mass.App.Ct. 172, 344 N.E.2d 208, 210 (1976), *aff'd*, 373 Mass. 594, 368 N.E.2d 1385 (1977).

"The existence of a duty is typically a question of law, not of fact." *Carrier v. Riddell, Inc.*, 721 F.2d 867, 868 (1st Cir. 1983). The plaintiff has pointed to no Massachusetts regulation, statute, or common law requiring insurance companies to investigate their appointed agents or to report to anyone agent misdeeds, including criminal convictions. M.G.L. c. 175, § 163 states:

> Upon written notice by a company authorized to transact business in the commonwealth of its appointment of a person to act as its agent herein, the *commissioner* shall, if he is satisfied that the appointee is a suitable and competent person ..., issue to him a license....

(Emphasis added.) Mr. Vigilante argues that there is an implied regulation requiring insurance companies to investigate and report criminal convictions of proposed agents to the Commissioner of Insurance. Before a regulation can be adopted in Massachusetts, however, certain procedures, such as notice and a public hearing, must be followed. *See* M.G.L. c. 30A; *Life Insurance Association of Massachusetts v. Commissioner of Insurance*, 403 Mass. 410, 530 N.E.2d 168, 170 (1988) ("When the Legislature has wanted the commissioner to have the authority to issue regulations, it has said so expressly"). *New England Acceptance Corporation*, cited by the plaintiff, did not address the issue of the extent of an insurance company's duty to investigate its potential agents. It held the

companies liable under an agency theory, not under a negligence theory for failing to investigate adequately.

I conclude that there is no duty on the part of insurance companies to investigate the criminal past of proposed agents. I also conclude that MONY had no duty to report the information it received about Rezvi's past convictions to the Commissioner of Insurance or to Rezvi's customers. The current application form for proposed insurance agents includes the following question, to be answered by the applicant:

> 18. Have you ever been convicted of, or arrested or prosecuted for, any crime of offense against the laws of this or any other state or country, or pled nolo to any indictment or complaint for such crime or offense, or is there pending against you any indictment, complaint or proceeding for a violation of such laws? (If yes, attach details.)

(Ianelli Dep. Exhibit I–3; Ianelli Dep. Vol. I at 34–35 and Vol. II at 58) The current form requires the applicant, but not the company, to report to the Division any changes in the answers. (Ianelli Dep. Exhibit I–3) The 1979 form under which MONY applied for Rezvi, however, asked neither the company nor the applicant about pasts arrests or convictions. Moreover, the 1979 form did not require either the company or the applicant to update the information given on the application. Therefore, I find that MONY had no duty to report the information it received about Rezvi.

The plaintiff also argues that MONY negligently misrepresented facts about Rezvi and negligently failed to disclose what it discovered about Rezvi's criminal convictions and fraudulent acts. The plaintiff further claims that there is a special relationship between insurers and insureds, making insurers liable for their insureds' pure economic loss.

There is no evidence that MONY made misrepresentations about Rezvi's character. Even assuming that MONY filled out the top half of the application form submitted to the Commissioner of Insurance,

MONY merely certified that it had conducted a routine background check that revealed no wrongdoing. Finally, the plaintiff has cited no Massachusetts case holding that there is a special relationship between the insurer and the insured. I decline the plaintiff's invitation to create a new duty on these facts.

Because I have found that MONY breached no legal duty, I grant summary judgment for MONY on Count II.[3]

■ Count IV alleges violations of M.G.L. Chapters 93A and 176D. Chapter 93A, § 9 incorporates violations of c. 176D, § 3(9). *See, e.g., Jet Line Services, Inc. v. American Employers Insurance Company*, 404 Mass. 706, 537 N.E.2d 107, 114 n. 11 (1989). For the reasons stated above, I find that MONY committed no "unfair or deceptive acts" under c. 93A. Therefore, I also grant summary judgment for MONY on Count IV.

*Phoenix's Motion for Partial Summary Judgment*

Phoenix has moved for partial summary judgment on two claims. First, paragraphs 12, 13, and 44 of the complaint allege that Phoenix failed to conduct an adequate investigation of Rezvi's background when it filed an agent's license application with the Division of Insurance on June 27, 1984. Second, paragraphs 36 and 37 of the complaint allege that Phoenix is liable to the plaintiff for money that was supposed to be invested in an annuity account in May 1985 by Rezvi but instead was converted by him. Other claims involving a Phoenix policy are not the subject of Phoenix's motion.

*The Negligent Licensing Claim*

■ On June 27, 1984, Phoenix submitted a license application to the Insurance Division. According to the plaintiff, Phoenix's internal application form contained a section to be filled out by the manager of the Boston Agency of Phoenix, including the following question: "Can you endorse the character and integrity of this person?" Nino Siracusa, manager of the

Boston Agency of Phoenix in 1984, answered "yes" to this question, even though he had had only one conversation with Rezvi. (Siracusa Dep., at 33) Mr. Siracusa testified that in investigating someone for licensing, "The main concern was to make sure he was a licensed agent, so that we could license him." (Siracusa Dep., at 12)

Phoenix claims that from Mr. Siracusa and the application filled out by Rezvi, it learned that Rezvi was a Chartered Life Underwriter, that Rezvi was an active member in the Boston Chartered Life Underwriters, and that Siracusa never had heard anything negative about Rezvi. In addition, Phoenix learned that Rezvi was a licensed agent of several other insurance companies, including MONY, and that Rezvi never had had his license revoked or suspended in any state. The Massachusetts Division of Insurance's records show that Rezvi was a licensed agent for Phoenix from July 12, 1984 to February 18, 1988.

The plaintiff claims that Phoenix's reliance on Mr. Siracusa's sole meeting with Rezvi and on the fact that Rezvi previously was an agent for MONY was inadequate to fulfill its duty to investigate. As I stated above, however, there is no Massachusetts statute, regulation, or common law duty that requires an insurance company to investigate a person's character before appointing him or her as its agent. Phoenix was not required to do any more investigating than it did before appointing Rezvi as its agent. Summary judgment shall be granted for Phoenix on the plaintiff's claim that its investigation of Rezvi was inadequate.

*The Annuity Investment Claim*

■ Mr. Vigilante alleges that in May 1985, Rezvi advised him to invest about $10,000 from his IRA account with Fidelity Investments in an annuity account at an unspecified institution. (Complaint, ¶ 36) The plaintiff then gave Rezvi a check for the purpose of this investment. (*Id.*) Mr. Vigilante further claims that Rezvi never deposited this check in any annuity account

---

**3.** Even if there had been such a duty, I do not find that the causal relationship between the

breach and the alleged damage was sufficiently "proximate" to support liability.

**30**

for the plaintiff, but instead converted the money. (Complaint, ¶ 37) To conceal the conversion, Rezvi paid the IRS the penalty charge arising from the early withdrawal of the IRA. (*Id.*) Rezvi did not tell Mr. Vigilante the name of the financial institution in which he planned to invest his money, and Mr. Vigilante does not recall ever asking Rezvi where he invested it. (Vigilante Dep. Vol. II, at 66–67, 70) Mr. Vigilante knew that Rezvi represented several different companies, but he did not know which one Rezvi was representing at the time. (*Id.* at 244) Mr. Vigilante had no direct contact with Phoenix in any way until September 17, 1987. (*Id.* at 63)

The plaintiff argues that his loss on the annuity purchase was the result of Phoenix's negligence in submitting its license application and in supervising Rezvi. Phoenix claims that it is not liable for Mr. Vigilante's loss on the annuity purchase because Rezvi was not acting as Phoenix's agent for the purpose of the transaction.

Phoenix's evidence that the plaintiff did not know which company Rezvi was representing when he was supposed to make the annuity investment establishes as a matter of law that Rezvi was not acting as Phoenix's apparent agent for the purpose of this transaction. As stated by Phoenix in its brief, there was simply no nexus between Phoenix's conduct and Vigilante's loss of the money that was supposed to be invested in an annuity. Therefore, Phoenix's motion for summary judgment on the annuity investment claim is allowed.

Accordingly, The Mutual Life Insurance Company of New York's motion for summary judgment is allowed. Phoenix Mutual Life Insurance Company's motion for partial summary judgment on paragraphs 12, 13, and 44 of the complaint is allowed. Phoenix's motion for partial summary judgment on paragraphs 36 and 37 of the complaint is allowed.