Laurent FRUTIN, Plaintiff,

v.

DRYVIT SYSTEMS, INC., Eugene Bielecki, Aviation East, Inc., Michel Mardini, and the United States of America, Defendants.

DRYVIT SYSTEMS, INC., Eugene Bielecki, and Aviation East, Inc., Third–Party Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 87–3046–S.

United States District Court, D. Massachusetts.

March 22, 1991.

Robert W. Casby, Sugarman & Sugarman P.C., Boston, Mass., for Laurent Frutin.

Peter J. Black, Meehan, Boyle & Cohen, P.C., Boston, Mass., for Dryvit Systems, Inc. and Eugene Bielecki.

John W. Adler, Chicago, Ill., for Aviation East, Inc. and Michel Mardini.

Douglas Coleman, Torts Branch, Civ. Div., U.S. Dept. of Justice and Andrew J. Dilk, Manager, Accident Counsel Branch, F.A.A., Washington, D.C., for U.S.

## MEMORANDUM AND ORDER ON THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

This action arises from the mid-air collision between a Piper Navajo and a Cessna. The plaintiff was a student pilot in the Cessna and claims, in relevant part, that the Federal Aviation Administration's (FAA) negligent conduct in not issuing a travel advisory to the Piper Navajo was a proximate cause of his injuries. The United States has moved for summary judgment thirteen days before trial. The United States asserts that it owed no duty to the plaintiff or, in the alternative, that it

could be held liable only for gross negligence, which the plaintiff did not allege. The plaintiff and the defendants/third-party plaintiffs Dryvit and Eugene Bielecki have opposed the motion.

The third party-plaintiffs argue that the United States has waived its assertion that it has no duty, since it failed to include it as a contested issue of law in the joint pretrial memorandum submitted in September 1990. The trial has been postponed on several occasions and the United States has stated no reasons for its unconscionable tardiness in contesting such a fundamental issue. While the late filing places undue time pressure on the opposing parties to respond to the fundamental issue of duty, I think it is necessary to decide the issue on its merits.

Summary judgment "is a useful device for ... putting a swift end to meritless litigation." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2nd Cir.1980). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment must affirmatively demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The opponent, on the other hand, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted). An issue is "genuine" if a reasonable finder of fact could find for the opponent on the evidence presented, and "material facts" are those that might affect the outcome of the litigation under the applicable substantive law. *Id.* The court must view the record in the light most favorable to the opponent of the motion and must indulge all inferences favorable to that party. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). However, "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensu-

ing trial." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989).

Taking the evidence in the light most favorable to the plaintiff and the third-party plaintiffs, the Navajo and the Cessna were flying under Visual Flight Rules (VFR). The Cessna had a transponder on board which caused it to appear on the radar screen of the air traffic controller (ATC), Mr. Anderson. The Navajo, when taking off from Providence Airport, requested and received Stage III radar services by Quonset Approach. Quonset Approach transferred responsibility for the Navajo to Mr. Anderson at Boston Approach. Mr. Anderson told the Navajo to "proceed northeast a seventy heading VFR twenty five hundred suggest a seven seventy heading maintain VFR ATIS mike plan landing runway three three right...." The Navajo responded that it was turning to zero seven zero. Exactly two minutes later, the Navajo called Boston Approach about the collision. The Cessna did not have radio communications with air traffic control. Mr. Frutin was a student pilot in the Cessna, flying under a hood. His trainer was Michel Mardini, who was watching for other planes under VFR.

Visual Flight Rules require pilots to watch and avoid other airplanes. Instrument Flight Rules (IFR) are generally imposed on commercial airliners. For planes flying IFR, the ATC directs the craft by altitude and velocity vectors. According to the ATC manual, ATC's first priority is separating aircraft and issuing safety alerts as required by the handbook. One of these safety alerts is the traffic advisory, which should be issued to those aircraft (IFR and VFR) whose proximity warrants one in the judgment of the ATC. A traffic advisory identifies the direction of the nearby aircraft, its distance from the pilot, its relative velocity, and, if known, the type of aircraft and its altitude. Mr. Frutin asserts that Mr. Anderson should have issued a traffic advisory to the Navajo about the presence of the Cessna.

The United States raises three legal issues concerning its duty to Mr. Frutin: 1)

can the United States be held liable under the Federal Tort Claims Act (FTCA) for failure to issue a traffic advisory to an aircraft flying VFR, 2) does Massachusetts law hold a private person liable for such conduct, and 3) if the ATC failed in its duty to the Navajo, can the United States be held liable for the injury to a passenger in the Cessna?

■ Our court of appeals has recently addressed what activities the United States may not be held liable for under the discretionary function exception of 28 U.S.C. § 2680. *Brown v. United States*, 790 F.2d 199 (1st Cir.1986), *cert. denied*, 479 U.S. 1058, 107 S.Ct. 938, 93 L.Ed.2d 989 (1987). The court distinguished the seminal case of *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and found that the United States was not liable under the FTCA for the failure to repair a weather buoy at George's Bank. The plaintiffs had alleged that the government had negligently failed to repair the malfunctioning buoy and that the failure resulted in an inaccurate weather forecast upon which plaintiffs relied and which ultimately caused their deaths at sea. Judge Aldrich concluded that the decision not to repair the weather buoy was a discretionary function exempted from liability under the rule of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The *Indian Towing* case involved running aground of the tugboat *Navajo* in the Mississippi River because of failure of the light in the lighthouse at Chandeleur Island. The lighthouse was on the list of operating lights published by the Coast Guard. The plaintiffs alleged that the Coast Guard had failed to check the battery and sun relay system, had failed to check the outdoor connections, had failed to check the light for nearly a month, and had failed to repair the light or give warning that it was not operating. 350 U.S. at 62, 76 S.Ct. at 123. Justice Frankfurter, writing for the majority, concluded that the claim involved "liability for negligence at what this Court has characterized the 'operational level' of governmental activity. *Dalehite v. United States*, 346 U.S. 15, 42

[73 S.Ct. 956, 971, 97 L.Ed. 1427]." 350 U.S. at 64, 76 S.Ct. at 124.

In imposing liability on the Coast Guard, Justice Frankfurter stated:

[o]nce it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order....

*Indian Towing*, 350 U.S. at 69, 76 S.Ct. at 126–27. The foremost concern of our court of appeals in *Brown* was that the judiciary should not put itself in the position of second-guessing the allocation of government resources. In the context of *Brown*, the court would have had to decide not only if the National Weather Service should have repaired the weather buoy, but also whether it should have installed additional buoys, more advanced computers, or more operators. 790 F.2d at 203. Imbedded in the ruling is the court's determination that weather forecasts are predictions of indeterminate reliability and reliance on them is questionable. 790 F.2d at 203–204. Additionally, the National Weather Service made no misstatements about the information coming from the buoy, but merely issued a prediction from the mix of information it had available. 790 F.2d at 204–205 (Pettine, J., concurring).

The facts of this case make it more analogous to *Indian Towing*. The United States has preempted control of the airways. The government's control is not absolute: instead of requiring all flights to fly by instrument, it imposes a duty on pilots flying VFR to watch for and avoid other aircraft. Moreover, it does not require all VFR flights to be in radio communication with ATC. When a plane is in contact with ATC, however, the FAA tells the pilot that the controller's primary duty is to separate the plane from other aircraft. The nature of VFR is that a plane will not always get a traffic advisory. However, when the circumstances warrant, the ATC will give it one.

The Navajo was in contact with Mr. Anderson. Mr. Anderson gave its pilot a suggested flight path. Mr. Anderson argu-

ably was able to see the Cessna on his radar scope. Just as in *Indian Towing*, the government put in place a certain aid to safe navigation, Mr. Anderson in this case rather than a lighthouse, to prevent the Navajo from having collisions. Once the Navajo had made radio contact with ATC, the government's discretionary function under VFR ceased. The government's role rose to an operational level. If the operation of that beacon with which the Navajo had made contact violated a standard of care created under Massachusetts law, then the United States may be held liable under the FTCA.[1]

■ The FTCA does not create new causes of action, but merely holds the United States liable in the same manner and to the same extent as a private individual would be under the state law. 28 U.S.C. § 2674. The United States asserts in its memorandum that it may not be held liable because "no Massachusetts law ... require[s] a private person to issue a traffic advisory or affirmative warning in circumstances similar to those alleged here." A private person, however, is not in the position of having preempted the field of air traffic control. Justice Frankfurter in *Indian Towing* rejected the argument that the FTCA imposes no liability for the performance of activities which private persons do not perform. "There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation." *Indian Towing*, 350 U.S. at 68, 76 S.Ct. at 126.

■ In the alternative, the United States argues that the analogous Massachusetts standard of liability is not negligence, but the Good Samaritan doctrine. In the only other airplane crash case in Massachusetts, the Court of Appeals for the First Circuit applied negligence doctrine. *Delta Air Lines, Inc. v. United States*, 561 F.2d 381 (1st Cir.1977), *cert. denied*, 434 U.S. 1064,

98 S.Ct. 1238, 55 L.Ed.2d 764 (1978) (involving an IFR flight). Our court of appeals also affirmed the application of Puerto Rico's negligence standard to the conduct of a controller in a VFR situation. *In re N–500L Cases*, 691 F.2d 15 (1st Cir.1982) (the district court had found that the controller did not have primary responsibility for separation when the VFR pilot saw the other aircraft). The United States has cited no case involving air traffic control that did not apply a negligence standard. The opposing parties have cited numerous other VFR cases in other jurisdictions applying a negligence standard. *See, e.g., Murff v. United States*, 598 F.Supp. 290 (E.D.Tex. 1984), *rev'd on other grounds*, 785 F.2d 552 (5th Cir.1986); *Rodriquez v. United States*, 823 F.2d 735 (3rd Cir.1987).

The United States argues that the Good Samaritan doctrine should be applied since the issuance of a traffic advisory to a VFR pilot is "voluntary and gratuitous." If a stranger had directed the plaintiff away from danger, the stranger would be liable under the Good Samaritan doctrine only for gross negligence. The FAA, however, is far from being a stranger to pilots. Pilots must live by its rules and regulations as the standard of care in the air. In the context of a closer relationship, the Massachusetts Supreme Judicial Court concluded that providers of services was liable for conduct that is negligent and fulfills two additional requirements. *Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983). In *Mullins*, the college was held liable for not maintaining adequate security for its students. The court found that the college received tuition and dormitory fees for its services, of which security was one part of the bundle. In the case of the FAA, the entire "bundle of services" includes the separation of airplanes from each other. The FAA did not volunteer itself to help aviators with air traffic con-

---

1. Mr. Frutin is not alleging that the FAA should have increased the staff or facilities at Boston Approach. Such an allegation would have come closer to the concerns expressed in *Brown* and the First Circuit's endorsement of *Chute v. U.S.*,

610 F.2d 7 (1st Cir.1978), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1979), and corresponding criticism of *Eklof Marine Corp. v. U.S.*, 762 F.2d 200 (2nd Cir.1985). *See Brown*, 790 F.2d at 201–202.

trol; it preempted the entire field and set regulations by which pilots must fly.

A more relevant analogy on the state level is how Massachusetts law applies to the negligent design and maintenance of roadways. Motorists have the primary responsibility to watch and avoid hazards and other vehicles. Massachusetts law, however, provides municipal liability for defects in the roadways. M.G.L. c. 84, § 15. A relevant example of a defect would be a missing "caution—yield" sign. In addition to municipal liability, if a private person is responsible for the roadway, then the person is liable for all damages in common law negligence. *See Marsden v. Eastern Gas & Fuel Associates,* 7 Mass.App.Ct. 27, 385 N.E.2d 528 (1979). Negligence is the appropriate standard of liability imposed on private persons and the United States by Massachusetts law.

 The United States' third argument is that even if it owed a duty to the Navajo, it owed no duty to Mr. Frutin in the Cessna. The Cessna was not in communication with ATC. The question of to whom the United States owed a duty asks the final question of liability: was the plaintiff's injury a foreseeable consequence of the breach by the United States of its standard of care? The air traffic controllers' primary responsibility is to maintain separation of aircraft. It is entirely foreseeable that if an ATC fails to warn one aircraft of the proximity of a second aircraft, then the first aircraft might collide with the second aircraft, causing injury to the passengers in the second aircraft. The second aircraft need not have been in radio contact with the controller for this danger to be foreseeable. Similarly if the controller negligently directed an airplane into this courthouse, its occupants, even those entirely ignorant of the FAA's procedures, could make out a claim in negligence.

To rebut this cornerstone of tort law, the United States relies heavily on *Carrier v. Riddell, Inc.,* 721 F.2d 867 (1st Cir.1983). In a duty to warn case, our court of appeals held that when the alleged negligence was an omission, a special relationship is required to impose liability. It concluded that even where an injury was caused by the failure to warn, was foreseeable, and the failure to warn was negligent, a duty could not necessarily be imposed. The missing element for the plaintiff in *Carrier* was that the defendant's product did not injure the plaintiff. The present case involves negligent failure to provide a service, and the *Carrier* case has no application.

Accordingly, the United States' motion for summary judgment is denied.